**In re Judy L. DEWALT, et al., Debtor.**

**MANUFACTURERS HANOVER, FKA Finance One of California, Inc., Appellant,**

v.

**Judy L. DEWALT, Appellee.**

**No. 90–55261.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided April 13, 1992.

---

Jerry Michael Suppa, San Diego, Cal., for appellant.

George A. Alspaugh, El Cajon, Cal., for appellee.

Before: BROWNING, ALARCON and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

The creditor, Manufacturers Hanover (formerly known as Finance One), appeals the Bankruptcy Appellate Panel's judgment dismissing its dischargeability complaint in debtor Judy Dewalt's Chapter 7 case on the ground that the complaint was filed late. *Manufacturers Hanover v. Dewalt (In re Dewalt)*, 107 B.R. 719 (9th Cir. BAP 1989). We reverse.

## FACTS AND PROCEEDINGS BELOW

On July 7, 1986, Dewalt executed and delivered to Finance One of California, Inc. a combined promissory note and security agreement in the amount of $4,065.81 payable monthly. In June 1987, the creditor notified the debtor that it was pursuing collection on the note. The next month, the debtor filed a petition for relief under Chapter 7 but did not list Finance One as a creditor as required by 11 U.S.C. § 521(1). Finance One, which was now known as Manufacturers Hanover, was listed, however, with an inaccurate address in the debtor's Notice of Intent.[1] As a result of the inaccuracy, the creditor received no initial notice of the bankruptcy or of the "341" creditor meeting which took place on September 2, 1987. The deadline "bar" date which set the final date a creditor could file a complaint for nondischargeability under section 523(a)(3) was set sixty days later on November 2, 1987.

Meanwhile, on August 20, 1987, the creditor filed a state court action against the debtor and on October 21, 1987, requested a default judgment. The debtor was served with a Request to Enter Default around October 21, 1987. Five days later the secretary for the debtor's counsel telephoned the office of the creditor's counsel and left a cryptic message with the secretary that the debtor had previously filed for bankruptcy. The creditor neither filed a complaint challenging discharge nor sought an extension of time to file such a complaint prior to the bar date of November 2, 1987.

After examining the debtor's bankruptcy file, Manufacturers Hanover's counsel informed the debtor's counsel that the company was not listed in the debtor's schedules. The debtor agreed to amend the section 523 schedules to reflect the creditor's claim and did so on November 25, 1987. Once again, however, the amended schedules listed an incorrect South Dakota address with a California zip code. Consequently, the creditor did not receive any notice from the court regarding the amendment to the schedules.

---

1. The creditor's address was listed on the Notice of Intent as "Finance One Manufacturers Hanover, South Dakota, 92010." We can only speculate how South Dakota entered the picture. Perhaps, the confusion was created by the initials "S.D." which are the same for both the Coyote State and San Diego where this action arose.

The creditor alleged material misrepresentations of financial condition in writing by the debtor and filed a Complaint to Determine Dischargeability under section 523(a)(2)(B) on March 21, 1988. The debtor filed a motion to dismiss the creditor's complaint because it was untimely.

The bankruptcy code anticipates this situation. Section 523(a)(3)(B) provides:

(a) A discharge under section 727, ... does not discharge an individual debtor from any debt—

. . . .

(3) neither listed nor scheduled under section 521(1) of this title with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

. . . .

(B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.*

(Emphasis added).

The bankruptcy court held that although the creditor learned of the bankruptcy filing just seven calendar days before the bar date, the creditor had enough time to seek an extension of time, pursuant to Rule 4007(c), before the bar date passed. The court therefore dismissed the complaint as untimely. Relying on *In Re Price*, 871 F.2d 97 (9th Cir.1989), a divided BAP affirmed. We reverse, largely for the reasons given by Judge Russell in his dissent. *See Dewalt*, 107 B.R. at 723–29 (Russell, dissenting).

## STANDARD OF REVIEW

Decisions of the Bankruptcy Appellate Panel are reviewed *de novo. Romley v. Sun National Bank (In re The Two "S" Corp.)*, 875 F.2d 240, 242 (9th Cir.1989).

We review the bankruptcy court's conclusions of law *de novo* and its findings of fact under the clearly erroneous standard. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

## DISCUSSION

In *Price*, an unscheduled creditor learned of the chapter 7 filing, although not of any deadlines, 58 days before the bar date. The creditor took no action before the bar date passed. We held that because the creditor "was given actual notice of the bankruptcy proceedings in time to file a complaint, or at least to file a timely motion for an extension of time," the debt had been discharged. 871 F.2d at 99. *Price*, however, did not set forth any standards for determining how long before the bar date an unscheduled chapter 7 creditor must learn of a bankruptcy to fall within section 523(a)(3)(B).

The BAP majority read *Price* as holding that if a creditor, acting under ideal circumstances and with the utmost of diligence, could have filed for an extension of time before the bar date, the creditor's late complaint would be barred. This interpretation unfairly punishes creditors, holding them to the highest standards of diligence in a situation caused by negligence of a debtor, and rewarding the debtor, in effect, for negligent filing.[2]

Further, it appears to be contrary to the statutory language to place creditors in a position where a motion for extension of time is their only option. As Judge Petris noted:

§ 523(a)(3)(B) refers to actual notice in time to permit a request for a determination of dischargeability. While a complaint to determine dischargeability is such a request, a motion for an extension of time is not.

*Dewalt*, 107 B.R. at 723 (Petris, concurring). Learning of a bankruptcy filing long after properly scheduled creditors have received notice may be a legitimate ground for requesting an extension of

---

**2.** The debtor's counsel in this case conceded it was entirely his fault the creditor was not prop-

erly scheduled. *See Dewalt*, 107 B.R. at 724.

time; we see no reason, however, to interpret the statute as placing even the most conscientious of creditors in a position in which, because of the negligence of the debtor, a motion for an extension of time is their only option.

As Judge Russell pointed out, in a small case such as this the filing of a request for an extension may consume a good portion of the entire litigation budget simply to return the creditor to the position it would have occupied if properly scheduled. *Dewalt*, 107 B.R. at 724–25. Moreover, the creditor may be forced to seek an extension before determining that the underlying claim of nondischargeability has merit. No purpose is served by burdening the parties and the bankruptcy court with such possibly unwarranted motions. The creditor should have time to review the merits and file a complaint of nondischargeability only if it is justified.

Guidance as to the time necessary for such action is provided, as Judge Russell noted, by Bankruptcy Rule 4007(c), which directs the court to give scheduled creditors at least 30 days notice of the impending bar date. *Dewalt*, 107 B.R. at 728–29. In fact, scheduled creditors will have notice of the bankruptcy filing long before the 30–day notice of the bar date has been received. *See* 8 Collier on Bankruptcy ¶ 4007.05[2] (15th ed. 1991) ("in most cases, creditors actually receive at least 80 days notice of the deadline for filing dischargeability complaints"). Moreover, scheduled creditors receive notice of the bar date, while it is sufficient under section 523(a)(3)(B) that the unscheduled creditor have "actual knowledge of the case." [3] Nevertheless, the 30–day notice provision of Rule 4007(c) provides a guide to the minimum time within which it is reasonable

to expect a creditor to act at penalty of default.

Even 30 days notice may not be enough if truly extraordinary circumstances are presented, as when an unsophisticated creditor, not represented by counsel, receives only the most sketchy notice that a bankruptcy has been filed.[4] On the other hand, a somewhat lesser period may be sufficient where there is clear evidence the creditor has enough advance knowledge of the bar date to file the complaint or request an extension and has purposefully chosen to lie in wait rather than present its claim.[5]

The circumstances of this case do not present either extreme. There was no evidence the creditor intentionally refrained from asserting its claim. Nor was the creditor unfamiliar with the bankruptcy law and unrepresented by counsel. Under such circumstances, and in the great majority of cases, 30 days advance knowledge of the case is both necessary and sufficient to satisfy section 523(a)(3)(B). Because the creditor received notice of the bankruptcy filing only seven days prior to the bar date, its complaint should not have been dismissed.

REVERSED and REMANDED.

---

**3.** It is well established that a creditor who learns of a bankruptcy filing has a duty to inquire into the relevant deadlines. *Price,* 871 F.2d at 99.

**4.** In no event, however, could the reasonable time period contemplated by section 523(a)(3)(B) be greater than the 80 days advance notice a properly scheduled creditor will ordinarily receive.

**5.** As the Eleventh Circuit noted, section 523(a)(3)(B) is intended to further

the bankruptcy policy of affording a 'fresh start' to the debtor by preventing a creditor, who knew of a proceeding but who did not receive formal notification, from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed him is undischargeable.

*In re Alton,* 837 F.2d 457, 460 (11th Cir.1988).