In re Reginald Leon **GRANT** previous dba **ATAX & Grant Smith Real Estate Group I** and Karen Jean **Grant** aka **Schafer, Debtors.**

William D. **GLOSSER**, Plaintiff,

v.

**PARRISH REAL ESTATE**, an unincorporated association, et al., Defendants.

Adv. No. 92–90429–B7.
Related Case No. 92–01845–B7.

United States Bankruptcy Court, S.D. California.

Nov. 12, 1993.

---

Samuel J. Armstrong, Costa Mesa, CA, for plaintiff.

Allen B. Kinch, Escondido, CA, for defendants.

## AMENDED ORDER ON MOTION FOR RECONSIDERATION

PETER W. BOWIE, Bankruptcy Judge.

This matter came before the Court on plaintiff's motion for reconsideration of dismissal of his adversary complaint. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

On February 14, 1992 the debtor/defendant, Grant, filed a voluntary Chapter 7 petition. Plaintiff, Glosser, was not listed as a creditor on the initial schedules. The Court sent out notice of the May 18, 1992 deadline for filing complaints objecting to discharge or dischargeability to all scheduled creditors.

Unaware of the bankruptcy, plaintiff filed a state court action on March 11, 1992, naming debtor as one of the defendants. Debtor was subsequently served with the state court summons and complaint on or about April 23, 1992. On May 21, 1992, three days after the last day to object to the debtor's discharge or to dischargeability, plaintiff received a notice adding plaintiff to debtor's list of creditors.

Plaintiff then removed the state court action to the bankruptcy court on June 18, 1992. To date, plaintiff has not filed a separate complaint objecting to the dischargeability of a particular debt or to the discharge of the debtor. Rather, the plaintiff filed an application for removal and attached the state court complaint which alleged fraud,

deceit, and conspiracy. Nowhere in plaintiff's complaint is 11 U.S.C. §§ 523 or 727 mentioned.

On July 15, 1992 debtor answered plaintiff's removed complaint and pleaded nine affirmative defenses. Among the nine affirmative defenses were the failure to state a claim upon which relief could be granted and failure to timely file a complaint objecting to discharge or dischargeability. The adversary matter was set on the Court's calendar and two status conference hearings were held on October 26, 1992 and January 1, 1993.

On March 8, 1993 a hearing was held on defendant's motion to dismiss the complaint. Debtor maintained that dismissal was appropriate because the complaint did not provide debtor with timely and sufficient notice of the nature of the suit as being one under § 523(c) and Bankruptcy Rule 4007(c), and also the complaint failed to state a claim upon which relief could be granted, pursuant to Rule 7012(b), because it did not seek nondischargeability. After consideration of the pleadings and oral argument, the Court granted the debtor's motion to dismiss and ordered the remainder of the case remanded to state court. Prior to a lodged order being entered, the plaintiff timely filed a motion for reconsideration and a hearing was thereafter held. After oral argument, the matter was taken under submission.

In granting the motion to dismiss, this Court was persuaded by the rationale of *In re Jasperson*, 116 B.R. 740 (Bankr.S.D.Cal. 1990). In that case, suit was commenced in state court against a business operated by the debtors before the debtors filed bankruptcy. When the debtors did file bankruptcy, they did not list the state court plaintiffs as creditors, contingent or otherwise. However, the state court plaintiffs learned of the bankruptcy on or before August 2, 1989, well before the dischargeability bar date of September 5, 1989. Instead of filing a complaint objecting to dischargeability prior to the bar date, the state court plaintiffs removed the state court case on August 14, 1989, still before the bar date. In January, 1990 the plaintiffs filed a complaint objecting to discharge of the debt and asserted it was an "additional pleading" in the removed action. The debtors brought a motion to dismiss on the ground that no dischargeability complaint had been timely filed and that the removed state court action did not suffice. In this Court's view, *Jasperson* was correctly decided and was persuasive in causing this Court to conclude that Glosser's removed action was no more a complaint objecting to dischargeability than the removed action in *Jasperson*.

The next step in concluding that dismissal and remand of Glosser's removed action was warranted involved the fact that Glosser knew of the bankruptcy at least by June 18, 1992, when the action was removed to this Court. Notwithstanding that knowledge, Glosser did nothing to amend his complaint, or to separately file a complaint objecting to dischargeability within any reasonable period of time. Indeed, more than six months had elapsed between removal and the filing of debtors' motion to dismiss, with no amendment or separate § 523 complaint filed.

The Court of Appeals for the Ninth Circuit had recently decided *In re DeWalt*, 961 F.2d 848 (1992). In that case, the bankruptcy court had dismissed a complaint objecting to dischargeability which was filed over four months after the complaint bar date because the creditor knew of the bankruptcy six or seven days before the bar date, but did not seek an enlargement of time. The Bankruptcy Appellate Panel affirmed, but the Court of Appeals reversed, holding that the creditor had to have more than six or seven days notice of the bar date. While the appellate court declined to set a bright line rule, the court felt that a creditor should generally have a 30–day window of opportunity, as contemplated by Rule 4007(c), Federal Rules of Bankruptcy Procedure.

■ With *DeWalt* and the rationale of *Jasperson* in mind, it was this Court's view that plaintiff Glosser's failure to amend or otherwise seek a determination of nondischargeability for more than six months after removal of the state action to this Court warranted dismissal. This Court has been asked to reconsider that ruling.

There is an important factual distinction between *Jasperson* and *DeWalt*, on one hand, and the instant case on the other. In *Jasperson,* the removing creditor knew of the bankruptcy more than 30 days before the bar date for complaints, yet only removed the state action without filing a complaint to determine dischargeability. Although *DeWalt* had not then been decided, *DeWalt* would continue to support the dismissal because the creditor had more than 30 days notice. In *DeWalt,* again, the creditor learned of the bankruptcy before the bar date, but with less than 30 days notice. The distinguishing fact in the instant case is that the creditor did not learn of the bankruptcy before the bar date, much less 30 days or more before the bar date.

■ The failure of a debtor to give a creditor at least 30 days notice of the bar date for filing complaints objecting to discharge or dischargeability, whether intentionally or innocently, raises an abundance of issues. As in the instant case, it often involves a creditor not originally included in the schedules, but who is added at some later date. In such a circumstance, the question arises regarding the continued existence of any right to object to discharge or dischargeability. In a case where a discharge has already been granted and, for the sake of discussion, more than the one year period for revocation has elapsed, it would appear that the creditor has lost the right Congress intended it to have to object to the debtor's discharge. Attempting to unring the discharge bell, with the steps other discharged creditors have taken in writing off the bad debt and otherwise, is not a solution the bankruptcy process would support.

The more recent cases which have considered elements of this conundrum arose in the context where a debtor sought to reopen a case to add one or more omitted creditors. The current trend of thinking in those cases is that reopening is a useless act because the debt was either discharged already, or is not dischargeable. *In re Beezley,* 994 F.2d 1433 (9th Cir.1993). However, those cases have been less than illuminating on how the debtor or the creditor is to obtain a determination of the dischargeability of the debt if the debt,

at least arguably, falls within the scope of § 523(a)(2), (4), or (6).

■ The answer may be suggested by the *DeWalt* decision, where the appellate court required approximately 30 days notice before the bar date. The creditor only had about one week's notice before the bar date, but after learning of the bankruptcy waited over four months past the bar date before filing the complaint. Presumably, the appellate court might have concluded that while seven days before the bar date was not sufficient notice, the combination of that seven days plus twenty-three days after the bar date, or thirty days after, or some number of days after the bar date *was* sufficient notice and opportunity to file, and that waiting over four months was too long. But *DeWalt* does not say that. To the contrary, *DeWalt* found seven days notice before the bar date insufficient and reversed, stating:

> Because the creditor received notice of the bankruptcy filing only seven days prior to the bar date, its complaint should not have been dismissed.

961 F.2d at 851. An inference which may be drawn from the holding in *DeWalt* is that where a debtor has not given sufficient notice before the bar date of the time to object to dischargeability the debtor loses the protection of the bar date.

As already mentioned, an analogous situation arises when a debtor seeks to reopen a case to add an omitted creditor, which also raises the issue of the opportunity for that creditor to object to discharge or dischargeability. As already noted, in those cases where the discharge has been entered and more than one year has elapsed from date of discharge or closing of the case, the creditor may have lost the opportunity to block or seek the revocation of the discharge. 11 U.S.C. § 727(e), Rule 4004. Consequently, one of the creditor rights built into the balance of the Bankruptcy Code would have been lost to the creditor through no fault of its own. A set of circumstances could exist in which a debtor intentionally omitted a creditor from the schedules for the purpose of depriving that creditor of its right to object to discharge, and perhaps dischargeability.

When confronted with an omitted creditor, most courts look to 11 U.S.C. § 523(a)(3). That section provides in pertinent part that a discharge under Chapter 7:

[D]oes not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request, . . . .

The Court of Appeals recently considered the operation of § 523(a)(3) in a no-asset Chapter 7 where the debtor sought to reopen to add an omitted creditor. In *In re Beezley*, 994 F.2d 1433 (9th Cir.1993), the court wrote:

After such a case has been closed, dischargeability is unaffected by scheduling; amendment of Beezley's schedules would thus have been a pointless exercise. (Citations omitted.) If the omitted debt is of a type covered by 11 U.S.C. § 523(a)(3)(A), it has already been discharged pursuant to 11 U.S.C. § 727. If the debt is of a type covered by 11 U.S.C. § 523(a)(3)(B), it has not been discharged, and is nondischargeable.

994 F.2d at 1434.

The panel decision was rendered *per curiam*, but Judge O'Scannlain wrote a lengthy concurring opinion in an effort to explain the process in detail. He agreed that in a no-asset case where no claims bar date was set, § 523(a)(3)(A) was not implicated because it was never too late to file a proof of claim. Consequently, such debts were discharged

under § 727, whether they were scheduled or not, and reopening to schedule the debt was a useless act. Judge O'Scannlain then wrote:

Similarly, even if an omitted debt falls under section 523(a)(3)(B), no purpose is served by reopening solely in order to amend the schedules; scheduling, per se, is irrelevant to dischargeability even under this subparagraph once a case is closed. As noted above, section 523(a)(3)(B) provides that, if the debt flows from an intentional tort "of a kind specified" in the relevant paragraphs, the debtor's failure to schedule in time to provide notice to the creditor of the need to seek an adjudication of dischargeability is *conclusive* (at least in the absence of actual knowledge of the bankruptcy on the part of the creditor). The debt is not discharged. "Scheduling makes no difference to outcome. 'Reopening a case does not extend the time to file complaints to determine dischargeability. Either the creditor had actual, timely notice of the [case] or he didn't. Amending the schedules will not change that.'" (Citations omitted.)

994 F.2d at 1437.

The issues left unresolved by the foregoing analysis concern when, where and how a determination is to be made regarding whether a particular unscheduled debt falls under § 523(a)(3)(A) or (a)(3)(B). Yet that determination is critical to the debtor who wants the debt discharged, and to the creditor who presumably does not. Judge O'Scannlain, in his concurring opinion in *Beezley* recognized a part of the concern. He wrote:

Had Beezley listed this debt in his bankruptcy schedules, Cal Land would have been required under Bankruptcy Rule 4007(c) to litigate this nondischargeability question "within 60 days following the first date set for the meeting of creditors," which had long since passed when this litigation commenced. However, because Beezley failed to schedule the debt, Bankruptcy Rule 4007(b) affords Cal Land the right to litigate dischargeability outside the normal time limits, again in accordance with section 523(a)(3)(B). (Citations omitted.)

This is the only right Cal Land can claim by virtue of its omission from Beezley's schedules. In particular, Cal Land cannot escape the need to prove nondischargeability merely because Beezley's failure to list his debt to Cal Land may have been intentional or may have prejudiced its ability to show that Beezley committed fraud years ago. . . .

994 F.2d at 1441.

 Were this Court to address the issue without the consideration of so many other courts, this Court would be inclined to hold that § 523(a)(3)(A) and (a)(3)(B) provide, respectively, that debts unscheduled by the bar dates for filing claims, or claims and objections to dischargeability are not discharged. The fact that Rule 2002(e) authorizes a no-asset, no claims bar notice should not permit a debtor to convert a debt nondischargeable under the language of § 523(a)(3)(A) into one that is discharged. Particularly is this so because the debtor's failure to schedule the debt, intentional or otherwise, often deprives the creditor of the opportunity to object to discharge under § 727. While that creditor may not have a debt which is nondischargeable under § 523(a)(2), (4), or (6), that creditor may be able to prevent discharge of that debt, and all others, by establishing one or more of the grounds set out under § 727(a). To hold that the unscheduled creditor may lose its right to object to discharge under § 727 *and* have its unscheduled debt discharged under § 523(a)(3)(A), because of the debtor's failure to do some act upsets the "balancing of the equities as between debtor and creditor. . . ." 994 F.2d at 1440.

 Having raised this Court's concerns, as set out above, it is sufficient to note that the facts in the instant case are different from *Beezley, DeWalt* and *Jasperson.* No motion to reopen is involved. Here, the debtor gave the creditor notice after the date barring complaints objecting to dischargeability. Under the teachings of *Beezley,* and *American Standard Ins. Co. v. Bakehorn,* 147 B.R. 480, 483–4 (N.D.Ind.1992), a creditor is not barred from filing a complaint to determine dischargeability under § 523(a)(2), (4), or (6), if the creditor was not scheduled in time to do so before the bar date, or did not have notice or actual knowledge in time to do so. The authorities teach that complaints to determine the dischargeability of such unscheduled debts are governed by Rule 4007(b), Federal Rules of Bankruptcy Procedure, which provides that such complaints can be filed at any time. Indeed, Rule 4007(b) even provides for the reopening of a case without fee to file a complaint to seek such a determination. As stated by the court in *American Standard Ins. Co. v. Bakehorn,* 147 B.R. 480, 484 (N.D.Ind.1992), "[i]n effect, a debtor who fails to list a creditor loses the jurisdictional and time limit protections of Section 523(c) and Rule 4007(b) [sic]."

For the foregoing reasons, this Court concludes that the motion for reconsideration should be, and hereby is granted. The prior ruling dismissing the debtor and remanding the balance of the action to state court is vacated.

IT IS SO ORDERED.