**In re Baruch TWERSKY, Debtor.**

**GRAND PROMENADE, a Limited Partnership, Plaintiff,**

v.

**Baruch TWERSKY, Defendant.**

**Bankruptcy No. LA94–17633TD.
Adv. No. 95–01323TD.**

United States Bankruptcy Court,
C.D. California.

Jan. 5, 1996.

---

Robert D. Hillshafer, Schimmel, Hillshafer & Loewenthal, Sherman Oaks, CA, for plaintiff.

Alexander Ribakoff, Irvine, CA, for defendant.

## MEMORANDUM OF DECISION AND ORDER THEREON

THOMAS B. DONOVAN, Bankruptcy Judge.

This nondischargeability matter was tried on September 27, 1995 on plaintiff's declarations in lieu of testimony and exhibits, all of which were received in evidence. Plaintiff's witnesses were cross-examined by the defendant. The defendant offered no direct testimony or documentary evidence in support of his position but filed points and authorities in support of a request for entry of judgment in favor of defendant based on the proposition that plaintiff's complaint was untimely and therefore should be barred.

Having considered the testimony, documentary evidence, pleadings and arguments of counsel, the court concludes that judgment should be entered in favor of the defendant. The court's ruling was announced orally at a hearing. This memorandum will constitute the court's written findings of fact and conclusions of law.

### Background

Dr. Baruch J. Twersky was the debtor in a voluntary chapter 11 bankruptcy case filed on February 28, 1994. The case was converted to chapter 7 on August 30, 1994. Grand Promenade, a limited partnership, filed its complaint against Dr. Twersky on January 30, 1995, seeking a judgment of nondischargeability, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6), in connection with an obligation incurred by Dr. Twersky for dental office leasehold improvements financed by the plaintiff in connection with plaintiff's lease to Dr. Twersky at 255 South Grand Avenue in Los Angeles. The Grand Promenade property is a high rise residential apartment complex that includes four floors of retail, office and medical space. Grand Promenade loaned Dr. Twersky $38,000 to pay for the improvements. In exchange, Grand Promenade received from Dr. Twersky a promissory note secured by a deed of trust on Dr. Twersky's personal residence. Subsequently, Dr. Twersky defaulted on both the lease and the leasehold improvements loan. Grand Promenade's complaint seeks a judgment of nondischargeability in connection with the unpaid balance on the leasehold improvements loan in the sum of $44,375, consisting of $35,500 in principal and accrued interest of $8,875.

Apparently because Dr. Twersky believed he not was personally liable on the loan, Dr. Twersky did not mention Grand Promenade in his bankruptcy schedules and statement of affairs. When Dr. Twersky defaulted on his obligations, Grand Promenade initiated fore-

closure proceedings in April 1994 and in August 1994 served Dr. Twersky with a 3–day notice to pay rent or quit. When it received no response from Dr. Twersky, Grand Promenade filed an unlawful detainer action in the Los Angeles Superior Court and in early October 1994 served Dr. Twersky with a summons and complaint. Shortly after, on October 11, Grand Promenade's lawyer apparently received a written notice of Dr. Twersky's bankruptcy and the automatic stay. The evidence suggests that Grand Promenade's lawyer did not learn in October or November of Dr. Twersky's chapter 7 341(a) meeting date, which was October 6, 1994, or that there was a bar date of December 5, 1994 with respect to the filing of nondischargeability claims.

Upon learning of Dr. Twersky's bankruptcy, Grand Promenade's lawyer immediately asked his attorney service to review the bankruptcy court file, but that effort proved unavailing when the bankruptcy court file was not available for review. There is no evidence whether Grand Promenade's lawyer reviewed the bankruptcy court docket, but the court takes judicial notice of the fact that the docket was available to the public on a regular basis and reflected the 341(a) meeting date as well as the December 5, 1994 deadline for filing complaints pursuant to 11 U.S.C. § 523(c) or § 727. Grand Promenade filed neither a nondischargeability complaint nor a motion to extend the deadline for filing such a complaint by December 5, 1994. However, on November 22, 1994, Grand Promenade filed with the bankruptcy court and served on Dr. Twersky's counsel a Motion for an Order to Deem Executory Contract Rejected accompanied by a declaration of Grand Promenade's counsel, which in part states:

> This Creditor also seeks to pursue a separate cause of action related to this lease in the form of an adversary complaint for fraud and will seek to prevent discharge of the Debtor with regard to that filing. This will be done in the very near future. To the extent that there was a bar date in place this Creditor should not be barred by said bar date due to the fact that no notice was given of the bankruptcy.

Grand Promenade's nondischargeability complaint was filed on January 30, 1995, about 111 days after Grand Promenade's lawyer received notice of the Twersky bankruptcy case.

The evidence also reflects that there was some confusion between Dr. Twersky and Grand Promenade with respect to the note and deed of trust. An initial set of documents was executed and delivered by Dr. Twersky in early 1992, with the understanding that Grand Promenade would not record the deed of trust until Dr. Twersky's leasehold improvements in the Grand Promenade property were completed. In violation of this agreement, but apparently inadvertently, Grand Promenade recorded the deed of trust before Dr. Twersky's leasehold improvements were complete. When the error was discovered, Dr. Twersky requested a reconveyance, and Grand Promenade promptly recorded a reconveyance of the deed of trust. Later, in October 1992, Dr. Twersky and his wife executed a replacement note and deed of trust. This time, Dr. Twersky asked Grand Promenade to defer recording of the new deed of trust pending the outcome of refinancing efforts in connection with the Twersky residence described in the deed of trust. Grand Promenade went along with this request.

After Dr. Twersky's February 1993 default on his note payments, Grand Promenade tried for months, through conversation and correspondence, to cajole Dr. Twersky into bringing his payments current. Those efforts did not work though Dr. Twersky acknowledged his debt, voiced his desire to pay, repeated his statement that he was trying to refinance his home and in August 1993 expressed to Grand Promenade his hope that an anticipated favorable settlement of his lawsuit against third parties would enable him to pay Grand Promenade.

Grand Promenade finally recorded the second Twersky deed of trust in October 1993 and recorded its notice of default in April 1994 only to learn later that Dr. Twersky in July 1993 had executed a grant deed to his house conveying to other third parties an 80 percent interest in his home. The grant deed was recorded in August 1993. In the

end, Dr. Twersky's deed of trust to Grand Promenade apparently proved to be worthless.

### Issues

This background leads to a number of legal issues:

### I. Rule 4007(c)

Rule 4007(c) of the Federal Rules of Bankruptcy Procedure provides:

A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of the creditors held pursuant to § 341(a). The court shall give all creditors not less that 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Grand Promenade did not move to extend the time to file its nondischargeability complaint, and the complaint against Dr. Twersky was not filed or served until well after the bar date established by Rule 4007(c) had passed. Plaintiff contends that its November 22, 1994 motion to reject an executory contract and supporting declaration should be accepted by the court as a motion to extend the bar date. The issue presented is whether Grand Promenade's executory contract motion pleadings are sufficient to constitute a motion to extend the bar date within the framework of Rule 4007(c).

### A. Substantial compliance and the relation back doctrine

█ Plaintiff's argument is based on two legal doctrines, "substantial compliance" and "relation back". "Substantial compliance" is defined as "compliance with the essential requirements, whether of a contract or of a statute." *Black's Law Dictionary* 1428 (6th ed. 1990). The "relation back" doctrine provides that "a pleading may not be amended to allege a new or different claim or defense unless it arose out of, or is based on or related to, [a] claim, transaction or occurrence originally set forth or attempted to be set forth." *Black's Law Dictionary* 1289 (6th ed. 1990). Two recent Ninth Circuit cases dealing with these doctrines shed light on this problem: *In re Marino*, 37 F.3d 1354 (9th Cir.1994), and *In re Dominguez*, 51 F.3d 1502 (9th Cir.1995).

*Marino* involved a creditor who obtained a state court fraud judgment against the debtor shortly before the debtor filed a chapter 11 petition. The creditor received timely written notice of the bankruptcy and the bar date for filing claims under 11 U.S.C. § 523(c). The creditor's inexperienced counsel filed an Opposition to Sale before that bar date and told the debtor's attorney that the creditor intended to file a nondischargeability complaint. The creditor's counsel mistakenly assumed that the bar date for filing a nondischargeability complaint was the same as the bar date for filing proofs of claims and filed a nondischargeability complaint nine days after the bar date. The defendant filed an answer asserting the bar date as an affirmative defense and moved to dismiss the complaint. The bankruptcy court dismissed the complaint.

On appeal, the Bankruptcy Appellate Panel and the Ninth Circuit affirmed. In arriving at its decision, the Ninth Circuit analyzed the requirements of Rules 3, 7, 8, 9, 10 and 15 of the Federal Rules of Civil Procedure (F.R.C.P.), all of which apply in adversary proceedings in bankruptcy cases (*see* Federal Rules of Bankruptcy Procedure (Bankruptcy Rules) 7003, 7007, 7008, 7009, 7010 and 7015) and emphasized that the purpose of a pleading is to give the defendant fair notice of the plaintiff's claim and the grounds for the claim. *Marino*, 37 F.3d at 1357. The court noted, "However, the policy of construing pleadings liberally does not justify the conclusion that any document filed in a court giving some notice of a claim satisfies the requirements of the Federal Rules." *Id.*

In *Marino*, the Ninth Circuit concluded that the equitable power to extend the time to file a complaint under Bankruptcy Rule 4007(c), if such power exists at all, is limited to situations where the *court* explicitly misleads a party. *Id.* at 1358. Since the plain-

tiff received notice of the bar date from the court, and the creditor's Opposition to Sale papers filed within the nondischargeability bar date window did not include a demand for relief as required by F.R.C.P.Rule 8(a) or satisfy other requirements for pleadings as set forth in the rules, the Ninth Circuit concluded that the Opposition to Sale papers did not substantially comply with the requirements of a complaint and, thus, that the nondischargeability complaint filed after the bar date could not relate back to the date of the Opposition to Sale and therefore was untimely. *Id.*

In *In re Dominguez*, 51 F.3d 1502 (9th Cir.1995), the debtor had filed its chapter 11 petition on January 22, 1988. In response to a plan filed by the trustee, creditors by the name of Miller filed a Memorandum Re: Relationship between Order Confirming Trustee's plan and Debtor's Discharge. In that memorandum, the Millers took the position that confirmation of the trustee's plan should be denied because the plan satisfied all the statutory requirements for nondischargeability under 11 U.S.C. § 1141(d)(3). The Millers did not file a timely nondischargeability complaint. Counsel for the Millers took the position that an adversary complaint was unnecessary based on his belief that section 1141(d)(3) prohibited the debtor's discharge as a matter of law. *Id.* at 1505.

At the confirmation hearing, the bankruptcy court deferred its decision on the Millers' memorandum and directed the Millers to submit their argument as a declaratory judgment action. The court also suggested that Bankruptcy Rule 4004(a) barred the Millers from objecting to discharge because they had not filed a complaint by the date of the confirmation hearing. The Millers responded by filing a complaint, after the confirmation hearing. In response, the defendant asserted Rule 4004(a) as an affirmative defense. The bankruptcy court dismissed the Millers' complaint. The Bankruptcy Appellate Panel reversed, finding that the Millers' pre-confirmation memorandum was sufficient to satisfy the requirements of a timely complaint on the basis that the creditors' memorandum clearly challenged the debtor's right

to a discharge and contained factual allegations and some evidence in support of those allegations. On further appeal, the Ninth Circuit affirmed the Panel, concluding that the post-confirmation hearing complaint related back to the creditors' memorandum filed before the hearing because there was no basis for the defendant to claim surprise or to assert that the plaintiffs should be equitably estopped from asserting their complaint. *Dominguez* at 1510. Thus, the court found that the Millers' pre-bar date memorandum constituted an adequate complaint.

■ In the case now before this court, the declaration of the plaintiff's attorney is not as descriptive as the creditors' memorandum in the *Dominguez* case. Grand Promenade's November 22, 1994 pleadings merely state counsel's intention to file a nondischargeability action, based on counsel's legal conclusion that a fraud claim exists. Grand Promenade's pre-bar date pleadings do not set forth a specific statutory basis for a nondischargeability claim, nor do they set forth a factual basis for a fraud claim. As a result, this court concludes that the situation now before the court is closer to the facts in *Marino* where the Ninth Circuit found that the pleading was inadequate to put the debtor on notice of the claim against him. This court concludes that Grand Promenade's November 22, 1994, pre-bar date motion was inadequate to constitute either a timely nondischargeability complaint or a timely motion to extend the time to file a nondischargeability complaint and that the complaint filed on January 30, 1995 does not relate back to November 22, 1994, the date of Grand Promenade's counsel's declaration first raising the issue of nondischargeability.

**B. The effect of Dr. Twersky's wrongdoing**

Plaintiff contends that Dr. Twersky misled plaintiff and/or acted in bad faith. Plaintiff's arguments raise the issue whether such wrongdoing should outweigh the fact that plaintiff was aware of the bankruptcy filing 55 days before the nondischargeability bar date and yet waited until 57 days after the bar date to file an adversary complaint.

909

There is a considerable volume of case law regarding late filed nondischargeability complaints by creditors mentioned in a debtor's bankruptcy schedules. Under Rule 4007(c), upon a timely motion, that is, one made before the expiration of the bar date, bankruptcy courts may grant extensions of the time within which a complaint must be filed. The bankruptcy court does not have discretion to enlarge the time to file a complaint if the request to do so is made after the deadline to file that complaint has passed. *See In re Kennerley,* 995 F.2d 145, 147 (9th Cir.1993); *In re Santos,* 112 B.R. 1001, 1004 (9th Cir. BAP 1990); *In re Fauchier,* 71 B.R. 212, 216 (9th Cir. BAP 1987); *In re Rhodes,* 71 B.R. 206, 207 (9th Cir. BAP 1987). In the case at hand, no timely motion to extend the time to file the complaint was made, and, as explained below, the plaintiff's complaint was not timely.

Although courts in the Ninth Circuit have indicated that unique or extraordinary circumstances may give rise to an exception to the Rule 4007(c) time limit for filing a nondischargeability complaint, the trend appears to be to recognize this exception, if at all, only in situations where the court explicitly misleads a party. *See, e.g., In re Kennerley,* 995 F.2d 145, 147–148 (9th Cir.1993).

## C. The effect of "actual notice" of the bankruptcy proceeding

Although Grand Promenade was not given formal, timely notice of the bar date for a nondischargeability complaint, Grand Promenade received "actual notice" of Dr. Twersky's bankruptcy before the bar date ran. The Ninth Circuit has addressed this problem in *In re Price,* 871 F.2d 97 (9th Cir.1989). *Price* involved a creditor who was not listed on the debtor's schedules and who was not given written notice of the July 22, 1986 bar date for filing nondischargeability complaints. Prior to the bar date, on May 21, 1986, the creditor's attorney received notice of the bankruptcy from debtor's counsel. On August 25, 1986, the creditor sought leave to file a late nondischargeability complaint. The Ninth Circuit held (1) notice to creditor's counsel of the existence of the bankruptcy case constituted notice to the creditor; and

(2) the fact that the creditor was not listed on the schedules did not relieve the creditor of his obligation to take timely action to protect his claim. *Id.* at 99. The Ninth Circuit found that when the creditor's attorney was notified of the bankruptcy, the creditor was given "reasonable notice of the action" and he had "sufficient opportunity to present his objections." *Id.*

In the case presently before this court, the creditor alleged that the debtor and/or his counsel misled the plaintiff regarding the bar date, but those allegations have no bearing under section 523 on the creditor's duties to inquire and timely file a complaint after receiving actual notice of the bankruptcy case.

Another Ninth Circuit case that addresses the problem of actual notice is *In re Dewalt,* 961 F.2d 848 (9th Cir.1992). In *Dewalt,* the debtor filed bankruptcy one month after a creditor notified her of its intent to pursue collection of her account. The debtor omitted that creditor from her schedules. In her notice of intent, the debtor listed the creditor with an incorrect address. As a result, the creditor did not receive notice of the bankruptcy or the 341(a) meeting. On October 26, 1987, after the creditor filed a state court complaint against the debtor, the debtor's attorney telephoned creditor's counsel regarding the bankruptcy filing. Apparently no mention was made of the November 2, 1987 bar date for filing nondischargeability complaints. Prior to the bar date, the creditor neither filed a complaint nor sought leave of court to extend the bar date. The creditor finally filed its nondischargeability complaint late, on March 21, 1988.

The bankruptcy court dismissed the complaint, reasoning that although the creditor received actual notice of the bankruptcy only seven days before the bar date, this was enough time to seek an extension of the bar date. Relying on *Price, supra,* 871 F.2d 97 (9th Cir.1989), a divided Bankruptcy Appellate Panel affirmed. The Ninth Circuit reversed, noting that,

> ... 30 days advance knowledge of the case is ... necessary ... to satisfy section 523(a)(3)(B).

*Dewalt,* 961 F.2d at 851. The Ninth Circuit criticized the Bankruptcy Appellate Panel's interpretation of *Price,* concluding that such an interpretation held creditors to an unfairly high standard of diligence and rewarded the debtor for a negligent filing. *Dewalt* at 850. The Ninth Circuit concluded that because the creditor received notice of the bankruptcy only seven days prior to the bar date, its complaint should not have been dismissed. *Id.* at 851.

The Ninth Circuit commented that as a general rule, "[g]uidance as to the time necessary for such action is provided ... by Bankruptcy Rule 4007(c), which directs the court to give scheduled creditors at least 30 days notice of the impending bar date." *Id.* The court acknowledged that in truly extraordinary circumstances, 30 days notice may not be enough,[1] then in dicta in footnote 4 commented as follows as to the maximum amount of time within which an unscheduled creditor who receives actual notice must take effective action to preserve its claim:

> In no event, however, could the reasonable time period contemplated by section 523(a)(3)(B) be greater than the 30 days advance notice a properly scheduled creditor will ordinarily receive.

*Id.* The court also noted that a shorter time period may be appropriate in certain cases. *Id.,* citing *In re Alton,* 837 F.2d 457, 460 (11th Cir.1988).

The bar date in the case now before this court was December 5, 1994. Plaintiff concedes that it received actual notice of the debtor's bankruptcy on October 11, 1994, more than 30 days before the bar date. Plaintiff filed its complaint on January 30, 1995, 111 days after plaintiff learned about the debtor's bankruptcy. Therefore, even under the *Dewalt* dicta, plaintiff's complaint should be treated as time barred. This court concludes that the *Dewalt* dicta is reasonable. Accordingly, the court concludes that under any application of the principles announced in *Dewalt,* Grand Promenade's complaint was filed too late.

## II. Dr. Twersky's waiver of the affirmative defense of the untimely filing of the adversary complaint

Dr. Twersky did not raise his affirmative defense of the bar date until the day of trial. The leading case in the Ninth Circuit regarding the effect of not raising the time bar defense is *In re Santos,* 112 B.R. 1001 (9th Cir. BAP 1990). In that case, the debtors filed chapter 7 on March 30, 1987. The debtors failed to appear at a timely Rule 2004 examination scheduled by a judgment creditor. The debtors' counsel and the creditor agreed to extend the July 10, 1987 nondischargeability bar date. On July 13, 1987, the creditor filed a nondischargeability complaint. Later, the debtors changed attorneys and the new attorney filed an answer on the same day he was retained. The answer raised no affirmative defense. On June 23, 1988, the debtors moved to dismiss the complaint as untimely. The bankruptcy court rejected waiver as a defense to the debtors' motion to dismiss the nondischargeability complaint as untimely. The creditor appealed from the bankruptcy court order dismissing the complaint as untimely.

On appeal, the Bankruptcy Appellate Panel reversed. Judge Perris began her opinion for the unanimous Panel with a thoughtful discussion of the policy, legislative history and case law behind Rules 4007(c) and 4004(a) and concluded that the time limits set forth in Rules 4007(c) and 4004(a) are not jurisdictional. *Santos,* 112 B.R. at 1004–6. Judge Perris then discussed and analyzed the applicability of the doctrines of equitable tolling, estoppel and waiver to these time limitations. Judge Perris stated,

> The essence of the doctrine of equitable tolling is that a limitations period does not run against a plaintiff who is unaware of his cause of action and the doctrine is invoked when the defendant conceals or makes it impossible for the plaintiff to discover the facts underlying his cause of action.

*Santos,* 112 B.R. at 1006. Judge Perris concluded that the doctrine of equitable tolling should not govern because the plain language

---

**1.** The example provided by the court was that of an unsophisticated creditor who lacks represen- tation and receives only sketchy notice of a filing. *Id.*

of Rules 4004(a) and 4007(c) precludes tolling. She concluded that the "running of [the time periods herein] is not dependent on the discovery or accrual of a cause of action as it would be in a statute to which tolling is more appropriately applied." *Id.*

Judge Perris next analyzed the doctrine of equitable estoppel which she defined as follows:

> Equitable estoppel requires reasonable reliance on a defendant's words or conduct in forebearing suit within the applicable limitations period.... [T]he application of estoppel is independent of the language of the statute and takes its life from the principle that no person will be permitted to profit from his or her wrongdoing in a court of justice.

*Id.* at 1007. Applying that principle to the facts before her, Judge Perris concluded that a plaintiff could not reasonably rely on a debtor's representation that the bar date would be extended when the rules clearly provide that only the court may extend the bar date. *Id.*

■ As to waiver, the Bankruptcy Appellate Panel held in *Santos* that "the timeliness of a dischargeability complaint presents an affirmative defense that must be raised in an answer or responsive pleading." *Id.* at 1008. The Panel opined that the question whether a defense should be deemed waived is left to the discretion of the trial court which should consider a number of factors in the exercise of its discretion, including the following:

> (1) the obviousness of the defense's availability, (2) the stage of the proceeding at which the defense is raised, (3) the time which has elapsed between the filing of the answer and the raising of the defense, (4) the amount of time and effort expended by the plaintiff in the case at the time the defense is raised, and (5) the prejudice resulting to the plaintiff which would result from allowing the defense to be asserted.

*Id.*

■ In the case now before this court, in order to determine if the affirmative defense of the Rule 4007(c) time bar was waived, the court has weighed the above five factors. The complaint was filed nearly two months after the bar date. The defense obviously was available from the beginning. Moreover, the declaration of plaintiff's counsel attached to the Motion for an Order to Deem Executory Contract Rejected expressly raised the bar date issue and urged that in this case the bar date should not apply. This declaration should have alerted the defendant to the time bar issue.

Dr. Twersky's time bar defense was not raised until the date of the trial, September 27, 1995, when Dr. Twersky's recently retained new counsel filed a Memorandum of Points and Authorities in Support of Request for Entry of Judgment in Favor of Defendant. This was nearly eight months after the complaint was filed and served on the defendant. Prior to the time this defense was raised, the plaintiff had worked hard to prosecute its claim. The plaintiff had filed and served its complaint, two notices of hearing dates and a status report and was represented at a status conference hearing before the court. Plaintiff also prepared for trial by submitting a trial brief, a supplemental trial brief, proposed findings of fact and conclusions of law, three declarations and documentary evidence and by appearing at trial with its three witnesses. Plaintiff expended significantly more effort on this case than did the defendant, who merely filed an answer and a status report and until the day of the trial filed no other trial related documents. It would be unfair to the plaintiff to allow the defendant to raise the time bar defense at this late date. The court concludes that the defendant by his conduct has waived any defense he may have had based on the time bar of Rule 4007(c).

### III. Damages and justifiable reliance

■ It is well-settled that a creditor alleging fraud and seeking nondischargeability on the basis of section 523(a)(2)(A) must prove, by a preponderance of the evidence, the following five elements: (1) the debtor made a material misrepresentation, (2) with knowledge of its falsity, (3) with the intent to deceive, (4) on which the creditor justifiably relied, and (5) due to which the creditor sustained loss or damage. *In re Kirsh*, 973 F.2d 1454, 1457 (9th Cir.1992).

■ Plaintiff's evidence consisted solely of the declarations submitted by plaintiff in lieu of live trial testimony.

The declaration of Wendy Rosenthal contains no evidence on the issue of justifiable reliance or damages.

The declaration of Suzanne F. Hillshafer, plaintiff's director, focuses on the lease negotiations. Both Ms. Hillshafer's and Ms. Rosenthal's declarations focus on the initials "D.M.D.P.C." following Dr. Twersky's signature on the deed of trust. This testimony is not relevant to any of the issues discussed in this memorandum. Ms. Hillshafer's declaration also discusses the letter agreement between plaintiff and Dr. Twersky that the [first] deed of trust executed by Dr. Twersky and his wife was not to be recorded until occupancy. The declaration also discusses the inadvertent premature recording of the first deed of trust, the reconveyance, and the second note and deed of trust. None of this testimony touches on the issues before the court.

The declaration of Nancy O'Hara Ficco, vice-president of Active Mortgage, an affiliate of Grand Promenade, states that she prepared the first note and deed of trust signed by the Twersky's. Ms. Ficco's declaration also states that she obtained a preliminary title report that revealed two encumbrances senior to Grand Promenade's deed of trust. Ms. Ficco testifies that Dr. Twersky orally requested her to wait to record the second deed of trust. Ms. Ficco states that later, after she initiated foreclosure procedures, she discovered that the defendant and his wife had conveyed an 80 percent interest in their property to third parties. She also states her conclusion that this conveyance rendered worthless the deed of trust in favor of plaintiff.

Notwithstanding the foregoing, there is no evidence in the trial record regarding the value of Dr. Twersky's property, the amount of the prior encumbrances against Dr. Twersky's property or the Twersky's equity in the property, at anytime. Given this record, there is no basis in the evidence for this court to conclude that the Twersky deed of trust ever would have been of any value as security for Dr. Twersky's debt to the plaintiff or that Grand Promenade had any basis for justifiably relying on the security of the Twersky deed of trust. As plaintiff, Grand Promenade bears the burden of proof on these issues and must prove its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It has not done so.

Assuming that everything the plaintiff's witnesses say is true, there is no persuasive evidence in the record to prove, as the plaintiff must, that the plaintiff suffered any damage as a result of Dr. Twersky's conduct with respect to the deed of trust. There is no evidence as to the value of the Twersky residence or as to senior debt secured by the property. There is no evidence that plaintiff made any inquiry concerning the value of Dr. Twersky's residence or the amount or disposition of senior debt secured by the property. Rather, the plaintiff's evidence acknowledges that plaintiff agreed to hold off recording the Twersky deed of trust specifically to enable Dr. Twersky to conclude a "refinancing" of his residential property, though, apparently, plaintiff never inquired concerning the terms of the proposed refinancing and Dr. Twersky made no commitments in that regard.

Under the circumstances, plaintiff's claims ultimately must fail because the plaintiff has failed to sustain its burden of proof as to reliance of any kind, let alone justifiable reliance as required by *Kirsh, supra*, 973 F.2d 1454, or now, *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), or that plaintiff was damaged in any amount by Dr. Twersky's conduct with respect to the deed of trust. Instead, this court concludes that the plaintiff knowingly accepted from Dr. Twersky an unrecorded, unevaluated deed of trust. The fact that the Twersky deed of trust ultimately proved to be worthless is not enough. For all the evidence shows, the deed of trust may well have been worthless from the start. As the court weighs the evidence, it is no better than evenly balanced between the plaintiff and the defendant. This is not sufficient to meet plaintiff's burden of proof.

Plaintiff's damage claim falls short. An inference more consistent with plaintiff's evi-

dence is that plaintiff actively pursued Dr. Twersky as a tenant and bent over backwards to accommodate him rather than allow the space to remain vacant. In the process, the plaintiff winked at Dr. Twersky's promises and blithely put the Twersky deed of trust in a drawer rather than record it, indifferent to the value of the collateral superficially represented by the document.

The court concludes that Grand Promenade made a business judgment that turned sour. Grand Promenade's business judgment coupled with Dr. Twersky's inability to pay his bills was the proximate cause of Grand Promenade's loss, not fraudulent conduct.

## IV. Section 523(A)(6)

As to plaintiff's claim based on section 523(a)(6), there is *no evidence of wilful* and malicious conduct on Dr. Twersky's part. He made a business deal. Grand Promenade accepted Dr. Twersky's terms and accommodated him throughout. The fact that Dr. Twersky was unable to perform is immaterial. He did nothing other than try to lease space and arrange for credit for leasehold improvements on terms upon which ultimately he was unable to perform. In light of the court's comments in Section III, above, Dr. Twersky's conduct falls into the category of a garden variety breach of contract in a transaction between two parties acting at arms' length in a commercial setting, not wilful and malicious behavior.

### *Conclusion*

Accordingly, judgment should be entered for the defendant.

### *ORDER*
IT IS SO ORDERED.