**In re Lon McGHAN, aka Lon L. McGhan fdba Envirotrend, Inc. fdba McGhan Management, Debtor.**

---

Lon McGhan, Appellant,

v.

Jason Rutz, Appellee.

No. 99–56956.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 2001.

Filed May 7, 2002.

1174

---

John C. Tobin, Hanover & Schnitzer, San Bernardino, CA, for the debtor-appellant.

William J. Light, David B. Felsenthal, Law Offices of Todd Rash, Riverside, CA, for the appellee.

Before: McKEOWN and FISHER, Circuit Judges, and HAGEN,* District Judge.

FISHER, Circuit Judge.

Appellee Jason Rutz was a listed creditor in his stepfather's—appellant Lon McGhan—bankruptcy proceedings. Rutz, a minor at the time, did not file a complaint of nondischargeability in those proceedings. As a result, the bankruptcy court issued an order discharging Rutz's claim and issued a permanent injunction barring Rutz from collecting on the debt. After Rutz attained maturity, he nonetheless filed a civil action against McGhan to collect on the discharged debt. Over McGhan's objections, the state court in which that action was filed ruled that

Rutz's action could proceed because Rutz had inadequate notice of the earlier bankruptcy proceedings. Arguing that only the bankruptcy court had jurisdiction to resolve that question, McGhan then moved the bankruptcy court to reopen his bankruptcy case to review the state court's decision. The bankruptcy court denied the motion, reasoning that McGhan's desire to relitigate an issue already heard in state court was insufficient cause to reopen the case. We reverse. Relying on *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir.2000) (en banc), we hold that state courts lack jurisdiction to determine whether a listed and scheduled creditor received adequate notice of discharge proceedings. We also hold that the state court lacked authority to modify the bankruptcy court's orders discharging Rutz's claim and permanently enjoining Rutz from collecting on the debt. In light of those holdings, we conclude that it was an abuse of discretion for the bankruptcy court to decline to reopen McGhan's bankruptcy case. The bankruptcy court was required to reopen the proceedings to protect its exclusive jurisdiction over the enforcement of its own orders.

## FACTS AND PROCEDURAL BACKGROUND

In 1991, McGhan was charged with five counts of sexual molestation of Rutz, his stepson. At the time the charges were filed, Rutz was 12 years old. McGhan pled guilty to one count of felony violation of California Penal Code § 288(a) (lewd and lascivious acts committed on a child under 14).

■ Shortly after his conviction, McGhan filed a voluntary petition for bankruptcy under Chapter 7 of the Bank-

---

* The Honorable David Walker Hagen, Senior District Judge, United States District Court for the District of Nevada, sitting by designation.

ruptcy Code. When a debtor files a Chapter 7 petition, the debtor lists each of his creditors. The appointed bankruptcy trustee convenes a meeting of these creditors pursuant to 11 U.S.C. § 341(a).[1] All creditors must receive at least 30 days' advance notice of the creditors' meeting. Rule 4007(c). Within 60 days after the date first set for that meeting, any creditor wishing to have a debt characterized as nondischargeable must file a complaint alleging nondischargeability of the debt. *Id.* If the creditor has adequate notice of the meeting but fails to make a timely complaint, his claim is automatically discharged pursuant to § 523(c)(1). Although debts for intentional torts such as Rutz's claim ordinarily are not dischargeable under § 523(a)(6) of the code, which states that debts for "willful and malicious injury" are nondischargeable, such claims will be discharged automatically if the listed creditor fails to make a timely objection. When a debtor is discharged under the Bankruptcy Code, the discharge "operates as a permanent injunction against any attempt to collect or recover on a ... debt." *Irizarry v. Schmidt (In re Irizarry)*, 171 B.R. 874, 878 (B.A.P.9th Cir.1994); *accord Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.)*, 885 F.2d 621, 626 (9th Cir.1989).

 A different provision of the code is implicated when the creditor was not listed on the bankruptcy petition. An unlisted creditor's claim ordinarily is not discharged. Under § 523(a)(3) of the code, however, the debt will be discharged if the creditor had "notice or actual knowledge" of the bankruptcy proceedings in time to permit the creditor to file a proof of claim and, if necessary, challenge its dischargeability. Under § 523(a)(3)(B), which applies to debts for "willful and malicious injury" defined by § 523(a)(6), the debt will not be discharged if the creditor (1) was neither listed nor scheduled and (2) did not have "notice or actual knowledge" of the case in time for timely filing a proof of claim and timely request for a determination of dischargeability. Federal courts have exclusive jurisdiction over §§ 523(a)(6) (nondischargeability of willful and malicious injury) and 523(c)(1) (adequacy of notice to a listed creditor) of the code, whereas state and federal courts have concurrent jurisdiction over § 523(a)(3) (unlisted or unscheduled debt) proceedings.

With respect to Rutz's claim, McGhan's bankruptcy proceedings followed the general scheme for a listed creditor rather than an unlisted one. His petition for bankruptcy listed Rutz as a creditor holding an unsecured nonpriority claim against him.[2] As Rutz's guardian, Rutz's mother received timely notice of the creditors' meeting and the deadline for creditors to file a complaint objecting to discharge of the debtor or to determine dischargeability of debts, but she did not file a nondischargeability claim on her son's behalf. Applying § 523(c)(1), the bankruptcy court issued a discharge order automatically discharging McGhan's debt to Rutz. The discharge order also stated that "any judgment ... obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to" any debt under § 523(a)(6). Pursuant to § 524, the discharge order also permanently enjoined any listed creditor "from instituting or continuing any action ... to collect such

---

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rule 1001–9036.

2. The petition described the claim as follows: "January 1989[.] Potential Civil Action for Personal Injury; Amount Unknown."

debts as personal liabilities of the above-named debtor." The bankruptcy court closed McGhan's case.

Upon reaching adulthood, Rutz filed a civil action against McGhan in California Superior Court, seeking damages arising out of his sexual molestation at the hands of McGhan. McGhan promptly moved to dismiss the action, arguing that Rutz's claim had been discharged by the bankruptcy court's discharge order and that Rutz's civil suit was enjoined by the § 524 discharge injunction. At McGhan's request, the state court took judicial notice of numerous documents from McGhan's bankruptcy case, including McGhan's bankruptcy petition, which listed Rutz as a creditor, and the discharge order containing the permanent injunction, which showed that Rutz's claim had been automatically discharged. McGhan contended that the bankruptcy court possessed exclusive jurisdiction over the dischargeability of Rutz's claim and that Rutz was estopped from collaterally attacking the validity of the discharge order and injunction in state court. Rutz responded that neither he nor the state court should be bound by the discharge order or permanent injunction because he had not received the notice required by § 523(c)(1) as a prerequisite to automatic discharge. Because notice of the proceedings had been provided only to

his mother and her interests had conflicted with his own, he contended, the bankruptcy court's orders did not apply to his action against McGhan.[3] The superior court agreed with Rutz. First, the court reasoned that it had jurisdiction pursuant to § 523(a)(3) to determine the sufficiency of Rutz's notice and the applicability of the discharge order. Second, the court agreed with Rutz that notice had been inadequate.[4] Accordingly, the court ruled that Rutz was not bound by the discharge order and allowed Rutz's case to proceed.[5]

McGhan then sought to collaterally attack the state court's ruling in federal court. He moved to reopen his Chapter 7 bankruptcy case in the bankruptcy court, seeking leave to file a complaint against Rutz for violation of the § 524 permanent discharge injunction. In denying McGhan's motion, the bankruptcy court agreed that the state court had jurisdiction to adjudicate the adequacy of Rutz's notice under § 523(a)(3)(B) and reasoned that McGhan's desire to relitigate an issue already properly decided by the state court did not constitute sufficient cause to reopen.[6] The Bankruptcy Appellate Panel ("BAP") affirmed, holding that the bankruptcy court had not abused its discretion in refusing to reopen McGhan's case. Like the state court and the bankruptcy court, the BAP assumed that the state

---

**3.** Rutz asserted a conflict of interest because his mother, also a listed creditor in McGhan's bankruptcy proceedings, had a competing claim for child support against McGhan.

**4.** Section 523(a)(3)(B) provides that a debtor is not discharged from any debt neither listed nor scheduled in time to permit the creditor to file a claim and request that the debt be found nondischargeable, unless the creditor had notice or actual knowledge of the case in time to file a timely request for a determination of dischargeability.

**5.** McGhan then filed a petition for writ of mandate with the California Court of Appeal,

arguing the superior court had misapplied federal bankruptcy law; the court of appeal denied the petition.

**6.** Section 350(b) states: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." In its conclusions of law, the bankruptcy court stated that it would exercise its discretion to reopen McGhan's bankruptcy case only if he would stipulate to allow the bankruptcy court to hear Rutz's claims under § 523(a)(6). McGhan would not so stipulate.

court's jurisdiction validly rested on § 523(a)(3). The BAP also affirmed on the alternative ground that the *Rooker–Feldman* doctrine precluded the bankruptcy court from reversing or modifying the state court decision.[7] McGhan appeals.

## STANDARDS OF REVIEW

■■■ We review jurisdictional issues in bankruptcy appeals de novo. *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1279 (9th Cir.2000). A refusal to reopen a bankruptcy case is reviewed for an abuse of discretion. *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)*, 161 F.3d 1216, 1217 (9th Cir.1998). We review the decision of the BAP de novo, *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 980 (9th Cir.2001), and independently review the bankruptcy court's rulings. *Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 511 (9th Cir.2001).

## DISCUSSION

### I. *State Court Jurisdiction*

■■ To assess whether the bankruptcy court abused its discretion by denying McGhan's § 350(b) motion to reopen his bankruptcy case, we first must determine whether the state court had the authority to adjudicate the adequacy of Rutz's notice and modify the bankruptcy court's discharge order and permanent discharge injunction. Relying on our en banc opinion in *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir.2000), we conclude that the state court lacked that authority. In reaching a contrary conclusion, the state court asserted that it had jurisdiction pursuant to § 523(a)(3), which

vests state courts with concurrent jurisdiction to adjudicate the adequacy of the notice provided to creditors who were neither listed nor scheduled. Because Rutz was a listed and scheduled creditor, § 523(a)(3) has no application here.

### A. *Gruntz*

*Gruntz* involved a Chapter 13 debtor who was prosecuted by the Los Angeles County District Attorney, convicted for misdemeanor failure to support his dependent children and sentenced to 360 days in jail. Gruntz subsequently filed an adversary proceeding against the County in bankruptcy court, asking the court to declare the state proceedings void as violative of the § 362(a) automatic stay on proceedings to collect debt. Reasoning that the state court's judgment included a determination that the automatic stay did not enjoin the state criminal proceeding, the bankruptcy court dismissed the complaint as collaterally estopped by the state judgment. The district court, acting in its appellate capacity, affirmed the dismissal on the basis of the *Rooker–Feldman* doctrine, which prohibits direct appellate review of state court decisions by federal courts other than the Supreme Court. 202 F.3d at 1077–78.

■■■ We reversed. *Gruntz*, as well as our later decision in *Contractors' State License Bd. v. Dunbar (In re Dunbar)*, 245 F.3d 1058, 1063 (9th Cir.2001), stand primarily for the proposition that federal courts are not bound by state court modifications of the automatic stay. *Gruntz*, 202 F.3d at 1077. *Gruntz* held that the *Rook-*

---

7. The *Rooker–Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme

Court and is beyond the original jurisdiction of federal district courts. *See* 263 U.S. at 415–16, 44 S.Ct. 149. *Feldman* held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. *See* 460 U.S. at 486–87, 103 S.Ct. 1303.

er–Feldman doctrine does not deprive federal courts of jurisdiction over the scope and applicability of the stay. *Id.* at 1083. *Dunbar* added that state court modifications of the automatic stay do not preclude federal relitigation of the scope and applicability of the stay under the doctrines of collateral estoppel and res judicata. *Dunbar,* 245 F.3d at 1060.[8]

▇▇▇ *Gruntz* has broader implications, however, that dictate the outcome here. First, *Gruntz* holds not only that a federal court may review state court decisions modifying an automatic stay, but also that state courts lack jurisdiction in the first instance to modify the stay. *Id.* at 1082–83. Because "bankruptcy court orders are not subject to collateral attack in other courts," "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay," and actions and judicial proceedings taken in violation of the automatic stay are void. *Id.* at 1082; *see also Gon-*zales v. Parks, 830 F.2d 1033, 1035–36 (9th Cir.1987) ("Congress' grant to the federal courts of exclusive jurisdiction over bankruptcy petitions precludes collateral attacks on such petitions in state courts.").

▇▇▇ Second, *Gruntz* bars state court intrusions on all "bankruptcy court orders" (or other "core" bankruptcy proceedings), 202 F.3d at 1082, not just the automatic stay. As we stated in *Gruntz,* "state courts should not intrude upon the plenary power of the federal courts in administering bankruptcy cases by attempting to modify or extinguish federal court orders *such as* the automatic stay." *Id.* at 1088 (emphasis added). Thus, just as "[a] state court does not have the power to modify or dissolve the automatic stay," *id.* at 1087, a state court also lacks authority to modify or dissolve a discharge order or the § 524 discharge injunction.[9] *See Lenke v. Tischler (In re Lenke),* 249 B.R. 1, 10 (Bankr.D.Ariz.2000) (applying *Gruntz* and holding that state courts lack jurisdiction to modify a bankruptcy court's dis-

**8.** *Gruntz* identified three limited circumstances in which a state judgment could be given preclusive effect in subsequent bankruptcy proceedings in federal court: (1) the state judgment is prepetition; (2) the bankruptcy court affirmatively has authorized the state action, as, for example, by lifting an automatic stay; or (3) the case does not involve a core proceeding that implicates substantive rights under title 11. *See Dunbar,* 245 F.3d at 1063; *Gruntz,* 202 F.3d at 1084; *cf. Diamond v. Kolcum (In re Diamond),* 285 F.3d 822 (9th Cir.2002) (affirming bankruptcy court's decision to give preclusive effect to state court judgment where the bankruptcy court lifted the stay as to the creditors' state-court action).

**9.** No matter how we characterize it, the state court's action here relates to a core bankruptcy proceeding. Dischargeability of a debt under § 523(a)(6), for instance, is a core bankruptcy proceeding, *see, e.g., Sandersville Prod. Credit Ass'n v. Douthit (In re Douthit),* 47 B.R. 428, 430–31 (M.D.Ga.1985); *Wurm v. Ridgway (In re Ridgway),* 265 B.R. 853, 857 n. 1 (Bankr.N.D.Ohio 2001); *Mass. Cas. Ins. Co. v. Green (In re Green),* 241 B.R. 550, 559 (Bankr.N.D.Ill.1999); *Leathem v. Volkmar (In re Von Volkmar),* 218 B.R. 890, 892 (Bankr.N.D.Ill.1998), over which federal courts possess exclusive jurisdiction. *Rein v. Providian Fin. Corp.,* 270 F.3d 895, 904 (9th Cir.2001). The adequacy of notice required for automatic discharge under § 523(c)(1) also is related to a core proceeding over which federal courts exercise exclusive jurisdiction. *See, e.g., RTC v. McKendry (In re McKendry),* 40 F.3d 331, 335 (10th Cir.1994); *Schunck v. Santos (In re Santos),* 112 B.R. 1001, 1005 (B.A.P. 9th Cir.1990). Finally, actions relating to the § 524 discharge injunction also constitute "core" proceedings. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),* 118 F.3d 1056, 1064 (5th Cir.1997); *In re Kewanee Boiler Corp.,* 270 B.R. 912, 918 (Bankr.N.D.Ill.2002) (action to enforce discharge injunction); *Polysat, Inc. v. Union Tank Car Co. (In re Polysat),* 152 B.R. 886, 888 (Bankr.E.D.Pa.1993) (scope of discharge injunction).

charge order); *see also Pavelich v. McCormick, Barstow (In re Pavelich)*, 229 B.R. 777, 782 (B.A.P. 9th Cir.1999) ("Congress has plenary authority over bankruptcy in a manner that entitles it to preclude state courts from doing anything in derogation of the discharge.").

Our extension of *Gruntz* to modifications of the discharge order and discharge injunction flows naturally from the policy concerns that informed our decision there. Our decision was animated by our concern that permitting a state court to modify the federal automatic stay "would undermine the principle of a unified federal bankruptcy system, as declared in the Constitution and realized through the Bankruptcy Code." 202 F.3d at 1083. "If state courts were empowered to issue binding judgments modifying the federal injunction created by the automatic stay, creditors would be free to rush into friendly courthouses around the nation to garner favorable relief." *Id.* at 1083–84. The same concerns arise when California courts purport to modify a discharge order and to grant relief from the bankruptcy court's permanent injunction.

Accordingly, we conclude that the state court lacked authority to adjudicate the adequacy of the notice received by Rutz. By reaching that issue, the state court held that Rutz was bound by neither the discharge order nor the discharge injunction, documents that on their face plainly barred Rutz's action. The state court effectively modified both orders, and in so doing impermissibly infringed upon the bankruptcy court's jurisdiction to enforce its orders. *See Gruntz*, 202 F.3d at 1082.

■■■ In so deciding, we do not hold that a state court is divested of all jurisdiction to construe or determine the applicability of a discharge order when discharge in bankruptcy is raised as a defense to a state cause of action filed in state court by a listed creditor. *See Pavelich*, 229 B.R. at 783 (holding that "state courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge" because "discharge in bankruptcy is a recognized defense under state law").[10] It plainly was in the power of the state court to take judicial notice of McGhan's proceedings. In this case, those documents showed that Rutz was a listed creditor, that Rutz's claim was discharged and that Rutz was enjoined from taking any action to collect on the debt. The state court should have given effect to the bankruptcy court's orders. By going further, the state court exceeded its jurisdiction, even if the state court believed that Rutz had valid grounds to object to the orders. As we noted in *Gruntz*, " 'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed [by the issuing court], even if they have proper grounds to object to the order.' " 202 F.3d at 1082 (quoting *Celotex Corp. v. Edwards*, 514

---

**10.** At least one out-of-circuit bankruptcy court has read *Gruntz* as barring a state court not only from modifying a discharge order but also from assessing the applicability of a discharge order to the action before it. *See Siskin v. Complete Aircraft Services, Inc. (In re Siskin)*, 258 B.R. 554, 562 (Bankr.E.D.N.Y. 2001) (criticizing and refusing to follow *Gruntz* because it supposedly blurred the distinction between a state court's valid authority to determine the applicability of an automatic stay to the action before it and the

bankruptcy court's exclusive authority to grant relief from the automatic stay). *But see Lenke v. Tischler (In re Lenke)*, 249 B.R. 1, 8 (Bankr.D.Ariz.2000) ("*Gruntz* should not be read to mean that states lack jurisdiction to determine the applicability of either the stay or the discharge, but only that they lack jurisdiction to modify either of them[.]"). However narrowly *Gruntz* is read, the state court's modification of the discharge order runs afoul of that decision.

U.S. 300, 306, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)).

Nor do we suggest that a listed creditor such as Rutz is without means to attack a discharge order on grounds of inadequate notice or to repel attempts to enforce the order against him if notice was insufficient. Rather, we hold that only the bankruptcy court could grant such relief. Rutz had several options, such as addressing the validity of the discharge order before proceeding in state court by petitioning the court to reopen the McGhan proceedings or by petitioning the bankruptcy court for leave to file an untimely complaint of non-dischargeability. If Rutz was unaware of the existence of the bankruptcy order until after he filed his state action, he could have sought to stay the lawsuit and petitioned the bankruptcy court for relief before proceeding in state court.

### B. Section 523(a)(3)

In concluding that it possessed jurisdiction to adjudicate the adequacy of Rutz's notice and to modify the discharge order and injunction, the state court erroneously relied on § 523(a)(3). State and federal courts have concurrent jurisdiction over actions brought under § 523(a)(3), which allows debtors to extend the coverage of the discharge order to creditors who were not listed but who had actual notice of the bankruptcy proceedings. *See Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 904 (B.A.P. 9th Cir.1999). By its plain language, however, that subsection applies only to creditors "neither listed nor scheduled" during the initial bankruptcy proceedings. *See, e.g., Malandra*, 206 B.R. at 672 (holding that a listed creditor contending that he did not receive notice of the case until after the discharge had issued did not raise a § 523(a)(3) claim because not being listed is a prerequisite to raising an issue under that subsection). Rutz offers no authority to the contrary. There is no dispute that Rutz was listed

during McGhan's bankruptcy proceedings, so the state court had no jurisdiction under § 523(a)(3) and Rutz is barred from obtaining relief under that subsection.

The distinction between § 523(a)(3), pertaining to an unlisted creditor, and § 523(c)(1), relating to the adequacy of notice provided to a listed creditor, is not merely technical. A creditor who was not listed in the bankruptcy proceedings is not expressly covered by the discharge order. When a court adjudicates whether that creditor's claim nonetheless should be discharged because the creditor had actual notice of the bankruptcy proceedings in time to file a nondischargeability complaint, the state court is not entertaining a collateral attack on the bankruptcy court's order or infringing on the bankruptcy court's exclusive jurisdiction. That situation is altogether different from the one here, where a state court entertains a *listed* creditor's argument to void or modify a discharge order or injunction that is facially valid and that expressly covers the creditor's claim. In the latter situation, the jurisdictional and policy concerns discussed in *Gruntz* are paramount.

### II. Abuse of Discretion

Having concluded that the bankruptcy court erroneously assumed that the state court had jurisdiction to modify the discharge order and injunction, we hold that the bankruptcy court abused its discretion by denying McGhan's § 350(b) motion to reopen proceedings. First, *Gruntz* and *Dunbar* make clear that neither *Rooker–Feldman* nor collateral estoppel is applicable here. To the extent that the bankruptcy court was concerned that it would have been collaterally estopped from relitigating an issue determined by the California Superior Court, therefore, that concern was misplaced. *See Dunbar*, 245 F.3d at 1064 (holding that the bank-

ruptcy court erred in finding itself precluded from reviewing the judgment of a state administrative law judge modifying the automatic stay); *see also Pavelich,* 229 B.R. at 782 (holding that when a bankruptcy court was presented with a motion to reopen proceedings after a state court had proceeded to hear a claim on a debt discharged by a bankruptcy court order, the bankruptcy court "should not have taken the position that it could not examine the state court judgment"). For the same reason, the BAP erroneously concluded that the bankruptcy court's decision was compelled by the *Rooker–Feldman* doctrine. *See Gruntz,* 202 F.3d at 1083 (holding that *Rooker–Feldman* is not implicated by collateral challenges to core bankruptcy proceedings because Congress vested the federal courts with the final authority to determine such issues). Our concern that the bankruptcy court misconstrued the validity of the state court's jurisdiction and the preclusive effect of the state court's decision requires at the very least that we remand for the bankruptcy court to reconsider its decision. *See Dunbar,* 245 F.3d at 1064.

 Given the posture of this case, however, we go further and hold that the bankruptcy court should have reopened the proceedings. It is well settled that "[a] Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant." *Gonzales,* 830 F.2d at 1036. A bankruptcy court may not decline to invoke this power in the face of a clearly invalid state court action infringing upon the bankruptcy court's exclusive jurisdiction. The bankruptcy court was required to reopen the proceedings to protect its exclusive jurisdiction over the enforcement of its own orders. *Cf. id.* (holding that the bankruptcy court properly vacates a state court judgment and properly holds that a state court's action was void from the outset

when the state court proceeded with an action in violation of an automatic stay).

### III. *Adequacy of Rutz's Notice*

We offer no opinion on the viability of Rutz's claim that he did not receive the notice required by § 523(c)(1). Because the bankruptcy court may confront that issue on remand, however, we note that in *In re Chicago, Rock Island & Pacific R.R. Co.,* 788 F.2d 1280 (7th Cir.1986), the Seventh Circuit opined that notice to a minor's mother might be inadequate where a conflict of interest prevents the mother from representing the minor's interests adequately in the bankruptcy proceedings. *Id.* at 1283. Whether the Seventh Circuit's reasoning should be applied here, and, if so, whether Rutz can establish that a conflict of interest or other grounds prevented his interests from being adequately represented so as to vitiate notice are issues to be determined in the first instance by the bankruptcy court.

### CONCLUSION

The judgment of the BAP is reversed. Under the circumstances of this case, the bankruptcy court abused its discretion by denying McGhan's motion to reopen the bankruptcy proceedings. We remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED. Each party to bear its own costs.