NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   AZ-11-1581-DJuHl |
| BRADLEY DEAN DIEPHOLZ and KAREN LOUISE DIEPHOLZ, | Bk. No.   10-22054-CGC |
| Debtors. | Adv. No.   11-00271-CGC |
| BRADLEY DEAN DIEPHOLZ; KAREN LOUISE DIEPHOLZ, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| WALTER ZAHLMANN; TWIN ENTERPRISES CONSULTING, | |
| Appellees. | |

Argued and Submitted on September 20, 2012
at Phoenix, Arizona

Filed - October 4, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Charles G. Case II, Bankruptcy Judge, Presiding

Appearances:    Donald J. Lawrence, Jr., Esq. for the Appellants, Bradley and Karen Diepholz; Brian M. Blum, Esq. of Rosenstein Law Group PLLC for the Appellees, Walter Zahlmann and Twin Enterprises Consulting.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before:  DUNN, JURY, and HOULE,[2] Bankruptcy Judges.

The debtor appellants Bradley and Karen Diepholz (the "Debtors") filed a motion (the "Motion") to dismiss the plaintiff creditors' Walter Zahlmann ("Zahlmann") and Twin Enterprises, LLC's (collectively, "Creditors") adversary proceeding seeking to determine the nondischargeability of a default judgment debt under § 523(a) of the Bankruptcy Code.[3]  The bankruptcy court denied the motion to dismiss.  The Debtors appeal the denial of their dismissal motion, and the motions panel granted leave to hear the interlocutory appeal.  We VACATE and REMAND for further findings consistent with this memorandum decision.

## I. FACTS

The too few facts before the Panel which are relevant in this appeal tempt us to compare this case to the fates of certain star-crossed parties for whom the question ultimately to be decided was — "What is in a name?"

The Debtors filed a chapter 7 bankruptcy petition on July 14, 2010.  The Debtors' bankruptcy counsel at all relevant times was Donald J. Lawrence, Jr. ("Lawrence").  The bankruptcy filing apparently was precipitated by the Debtors' desire to

---

[2] Hon. Mark D. Houle, Bankruptcy Judge for the Central District of California, sitting by designation.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

preempt a wage garnishment order in the first of two Arizona state court collection cases pending against them. In the first case, Lawrence filed a notice of bankruptcy for the Debtors on July 30, 2010.[4] The second of the two state cases is the Creditors' action filed in 2008 seeking to collect from the Debtors on a default judgment which Creditors obtained in April 2006 against Logo Lines Corporation for allegedly knowingly presenting a check with no intention of payment.[5] The adversary proceeding underlying this appeal seeks an exception to discharge for fraud based on the 2006 default judgment against Logo Lines Corporation.

The misadventure truly begins for our purposes when the Debtors' name was misspelled as "Diepholtz" on the Debtors' chapter 7 petition. On July 15, 2010, the bankruptcy court sent a notice of the meeting of creditors to all scheduled creditors, not including the Creditors, which showed October 18, 2010, as the bar date ("Bar Date") for filing objections to discharge.

Neither the Creditors nor their counsel in the state litigation were included on the original mailing matrix. On August 12, 2010, the Debtors filed an amended petition to correct the misspelling of the Debtors' name, an amended Schedule F, as

---

[4] Appellees cite to the dockets of these state court cases for the notice of bankruptcy at tabs 3 and 4 of "Appellee's Supplemental Excerpts of Record," but no such supplemental record was ever filed on the appeal docket. However, the allegation that such a notice was filed in the first state court case is never disputed anywhere in the record.

[5] Creditors allege that the Debtors own Logo Lines Corporation, a contention which the Debtors vehemently contest.

-3-

well as an amended mailing matrix, which included Creditors[6] and their attorney, Mayes Telles, PLLC.[7] Despite the amendment and Lawrence's alleged notification of the corrected name to the Clerk of Court, the caption of the case was not changed in the court's electronic records to reflect the correct spelling of the Debtors' name until June 15, 2011.[8] Lawrence alleges that on August 12, 2010, the same day that the amended documents were filed, Lawrence's firm sent notice of the bankruptcy bearing the correct spelling of the Debtors' name by mail to Creditors and Mayes Telles, PLLC. For reasons unexplained in any declaration in the record, a certificate of notice for these mailings was not filed by Debtors' counsel until January 6, 2011.

On August 20, 2010, Zahlmann sent an email directly to Mr. Ehringer ("Ehringer"), the Debtors' state court counsel in the collection case, offering to settle and informing Ehringer that Zahlmann's address had changed. Ehringer notified Mr. Blake Mayes ("Mayes"), Creditors' state court attorney, that Zahlmann had contacted Ehringer directly and that Ehringer had not read the email because the communication was improper since Zahlmann

---

[6] With the address: c/o Twin Enterprises Consulting, 4236 E. Whitney Lane, Phoenix, AZ 85032.

[7] With the address: 331 North First Avenue, St. 107, Phoenix, AZ 85003.

[8] The bankruptcy court's Under Advisement Decision notes that because the amendment was titled, "Amendment to Petition," the Clerk's Office did not automatically review the filing and make the appropriate change, but the bankruptcy court made no specific finding regarding Lawrence's allegation that the Clerk's Office was specifically informed of the name change.

-4-

was represented. Further, Ehringer asked if Ehringer should delete the email, to which Mayes responded that Ehringer should delete the email. Ehringer alleges that because he never read and immediately deleted the email, Ehringer never saw Zahlmann's notification of a new address. The only fact explicitly disputed by the parties at the hearing before the bankruptcy court appears to be whether Creditors actually received the August 12, 2010 corrected notice with the Debtors' name correctly spelled.

On August 10, 2010, Ehringer emailed Mayes saying that, "I have been told that Mr. and Mrs. Diepholz have filed bankruptcy, but I have not seen any paperwork to confirm that filing." Mayes alleges that beginning on August 22, 2010, and on subsequent occasions, Mayes "conducted research on PACER," to locate the Debtors' filing, but could not find any information. On August 25, 2010, Mayes asked Ehringer by email for the name of the Debtors' bankruptcy counsel, but Ehringer did not immediately respond.

Neither Ehringer nor Mayes communicated again as to the name of the Debtors' bankruptcy counsel until October 11, 2010, when Mayes requested further information about the bankruptcy because Mayes allegedly still could not find any information about the Debtors' bankruptcy on PACER. On October 11, 2010, the same day, and seven days before the Bar Date, Ehringer provided Lawrence's name to Mayes in response to Mayes' email request. Ehringer alleges that Ehringer did not feel it was necessary to respond to the earlier August 25, 2010 request for bankruptcy counsel's name because Ehringer believed that Mayes and Lawrence were in direct contact after Ehringer was advised by Lawrence on

-5-

September 4, 2010, that notice of the bankruptcy was sent to Mayes.

Mayes emailed Ehringer on October 25, 2010, eight days after the Bar Date, asking for "[a]ny word on bankruptcy," to which Ehringer responded that the bankruptcy assuredly had been filed and provided not only Lawrence's name, but also Lawrence's email address, "teamlaw_don@teamlawaz.com." However, in the same October 25, 2010, email, Ehringer sympathized with Mayes' hard luck in his name search for the Debtors' bankruptcy filing admitting that, "I just don't know how to run a PACER search, since I got the same results that you did." Finally, on October 27, 2010, Lawrence emailed Mayes advising Mayes of the bankruptcy case number.

On February 7, 2011, Creditors filed an adversary complaint seeking an exception to discharge for their claim. On March 11, 2011, Debtors filed a motion to dismiss ("Motion to Dismiss") the complaint for failure to file the complaint timely under Rule 4007(c). On June 9, 2011, the bankruptcy court heard argument from counsel for both parties on the Motion to Dismiss and took the matter under advisement. On July 18, 2011, the bankruptcy court issued its Under Advisement Decision Denying Motion to Dismiss Complaint ("Under Advisement Decision"), finding that Creditors lacked adequate notice of the bankruptcy case and timely filed the complaint under Rule 4007(b). On August 17, 2011, the bankruptcy court issued its Order Denying Defendants' Motion to Dismiss.

On August 1, 2011, Debtors filed a Motion for Reconsideration of the bankruptcy court's decision on the Motion

to Dismiss, which the bankruptcy court denied by order entered on October 6, 2011.

On October 18, 2011, Debtors filed their Notice of Appeal of the denial of their Motion to Dismiss. On December 30, 2011, the Clerk of the Bankruptcy Appellate Panel issued an order requiring appellants either to file a written response explaining why the Panel has jurisdiction given the interlocutory nature of the denial of a motion to dismiss, or file a motion for leave to appeal. On January 12, 2012, Debtors filed a Motion for Leave to Appeal, which was granted by the motions panel on February 9, 2011.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). The Panel has jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Did the bankruptcy court fail to make sufficient findings of fact and conclusions of law on the question of whether the mailbox rule applies to impute receipt of notice by the Creditors.

Did the bankruptcy court err when it held that failure to comply with Rule 1005 implicates § 523(a)(3)(B) and Rule 4007(b), where there is a misspelling of debtor's name in the court's records.

Did the court err when it held that a properly scheduled creditor without proper notice may file a complaint pursuant to section § 523(a)(3)(B) at any time.

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's denial of the Motion to Dismiss, a legal question, de novo, but we must accept the bankruptcy court's factual findings unless they are clearly erroneous. United States v. Ziskin, 360 F.3d 934, 942 (9th Cir. 2003). Findings of fact regarding receipt of notice are reviewed for clear error. Rule 8013; Moody v. Bucknum (In re Bucknum), 951 F.2d 204, 206 (9th Cir. 1991).

We must affirm the bankruptcy court's factual findings under the clear error standard unless those findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc).

A mixed question exists when the facts are established, the rule of law is undisputed, and the issue is whether facts satisfy the legal rule. Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir. 1997). Mixed questions require consideration of legal concepts and the exercise of judgment about the values that animate legal principles. Id. We review mixed questions of law and fact de novo. Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 245 (9th Cir. BAP 2007).

De novo means review is independent, with no deference given to the trial court's conclusion. See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

A motion to dismiss an adversary proceeding is subject to Civil Rule 52(a) by incorporation under Rules 7052 and 9014,

which require the bankruptcy court to find the facts specifically and state its conclusions of law separately. In the absence of sufficient fact findings, the Panel may vacate a decision and remand the case to the bankruptcy court to make further findings. First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (9th Cir. BAP 2012)(citing United States. v. Ameline, 409 F.3d 1073 (9th Cir. 2005)).

## V. DISCUSSION

A. <u>The bankruptcy court failed to make specific findings of fact and conclusions of law on the question of whether the mailbox rule applies to impute receipt of notice by Creditors.</u>

In this case, the "rule of law" governing the mailbox rule for notice is articulated by the Panel's decision in Cuna Mut. Ins. Group v. Williams (In re Williams), 185 B.R. 598 (9th Cir. BAP 1995). The Williams Panel made clear that, "Proof of mailing creates a rebuttable presumption of its receipt." Id. at 599 (citing In re Bucknum, 951 F.2d at 206-07; Osborn v. Ricketts (In re Ricketts), 80 B.R. 495, 497 (9th Cir. BAP 1987)). Further, "the law in this circuit is that denial of receipt does not rebut the presumption." In re Bucknum, 951 F.2d at 207; In re Ricketts, 80 B.R. at 497. The Ricketts court reasoned that, "If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled." Id. at 497.

Although an affidavit alleging nonreceipt alone is not

sufficient to defeat the presumption, such an affidavit should be considered along with other submitted evidence. <u>Williams</u>, 185 B.R. at 600. In order to overcome the presumption, specific objective evidence showing nonreceipt is required. <u>Id.</u> For example, the <u>Williams</u> Panel suggested several kinds of evidence that could defeat the presumption including "testimony of a clerk's office employee that notice was not sent" (citing <u>Ricketts</u>, 80 B.R. at 489-99), or proof that the mail was returned unclaimed (citing <u>Herndon v. De la Cruz (In re De la Cruz)</u>, 176 B.R. 19, 22 (9th Cir. BAP 1994)). The <u>Williams</u> Panel held that evidence of a party's business routine regarding receipt of mail is merely another form of a statement of nonreceipt which may not, by itself, defeat the presumption. <u>Id.</u>

Because we review a fact determination as to whether notice was adequate for clear error, we must determine whether the evidence considered by the bankruptcy court supports a finding that Creditors did not have adequate notice of the Debtors' bankruptcy. Specifically, the factual question before the bankruptcy court was whether Creditors put forward sufficient evidence to overcome the receipt presumption of the alleged August 12, 2010, mailing of notice bearing the correct spelling of the Debtors' name (the "Corrected Notice"). Since the bankruptcy court did not make any reference to the mailbox rule or the cases governing the presumption of notice receipt in its Under Advisement Decision, nor in its final order denying the

-10-

Motion to Dismiss,[9] it is unclear from the record whether, or to what degree, the bankruptcy court considered the Corrected Notice or the nonreceipt of the Corrected Notice alleged by Creditors.

However, at oral argument on the Motion to Dismiss, the bankruptcy court acknowledged that "we have a mailbox-rule problem," noting that the reason for the mailbox rule is to avoid "an unfortunate circumstance when you have a he said she said." Tr. of June 9, 2011 H'ring 144:4-11.

Lawrence argued to the bankruptcy court that the certificate of service confirming the Corrected Notice should be sufficient evidence of receipt because both the Debtors' name and the addresses of Creditors, as well as their attorney, were correct at the time of mailing despite any possible move by Creditors "around the same time" of the notice.[10] Tr. of June 9, 2011 H'ring 137:3-4, 8-9. LaShawn Jenkins, bankruptcy counsel for Creditors, argued that despite Mayes Telles having standard mail handling procedures, Mayes Telles never received the Corrected

_____

[9] The Order Denying the Motion to Dismiss incorporates the findings and conclusions of law from the Under Advisement Decision.

[10] Lawrence conceded that Zahlmann's attorney Mayes, but not Zahlmann himself, may have put forward sufficient evidence supporting nonreceipt of the August 20, 2010, notice by describing Mayes' firm's mail handling procedures. Tr. of June 9, 2011 H'ring 137:5-8. As noted above, this evidence by itself may not be sufficient to overcome the presumption. See Williams, 185 B.R. at 600. Further, Lawrence conceded that although creditors have a duty to file a change of address in order to receive notices after a move, "[Zahlmann's move] may actually be the reason why Mr. Zahlmann never received the notice that we mailed out because he did move." Tr. of June 9, 2011 H'ring 148:6-11.

-11-

Notice. Tr. of June 9, 2011 H'ring 144:18-19.

In declining to make oral findings on the record at the hearing, the bankruptcy court cited the fact intensive nature of the case and the court's intent to take the matter under submission for a later ruling. Tr. of June 9, 2011 H'ring 148:23-25 – 149:1-2. No findings with respect to application of the mailbox rule were made subsequently in the bankruptcy court's Under Advisement Decision. Because defeating the presumption of receipt requires specific objective evidence of nonreceipt, additional findings are necessary to clarify the record for review.

It is clear from the Under Advisement Decision that the bankruptcy court found that notice was inadequate because of the misspelling of Debtors' name in the original petition and court records.[11] However, it is unclear whether the bankruptcy court intended to find that Creditors or their attorney never received adequate notice via the alleged Corrected Notice with the correct spelling of the Debtors' name. The Panel could infer a finding from the bankruptcy court's silence that the presumption was rebutted as to the Corrected Notice being received by either the Creditors or their attorneys. However, the lack of any reference at all to the mailbox rule and related findings in the Under Advisement Decision makes that inferential leap inappropriate.

We note that a bankruptcy court's failure to make factual findings as required by Civil Rule 52(a) does not require vacating and remand unless a full understanding of the issues

---

[11] See infra Section B of the Discussion.

-12-

under review is not possible without the aid of such findings. See Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001). Here, it is not clear without further findings from the bankruptcy court whether the Corrected Notice gave adequate notice to the Creditors of the Debtors' bankruptcy filing. Had the bankruptcy court made a determination that either Creditors or their attorney had received actual or presumptive notice with the correct spelling of the Debtors' name, then the bankruptcy court's holding based on Rule 1005 would be moot with respect to whether the misspelling in the court's records failed to provide adequate notice in and of itself. Accordingly, we VACATE the denial of the Motion to Dismiss and REMAND to the bankruptcy court for further proceedings and findings of fact.

     B.   <u>Whether failure to comply with Rule 1005 implicates § 523(a)(3)(B) and Rule 4007(b) where there is misspelling of debtor's name in court records.</u>

         1.   <u>Bankruptcy Court's Holdings</u>

The bankruptcy court found that the Debtors' name was misspelled on the original petition and court records, and therefore Creditors' attorney could not find the Debtors' bankruptcy filing on PACER using only the Debtors' name as a search criterion. The bankruptcy court held that notice was inadequate to allow for Creditors to file a timely objection to discharge, triggering § 523(a)(3)(B) because the PACER searches by name failed, and Creditors' attorney did not receive the case number until October 27, 2010.

The bankruptcy court further held, despite Creditors' filing of the adversary complaint on February 7, 2011, 103 days after the October 27, 2010, actual notice date, that because

-13-

Rule 4007(b) governing complaints under § 523(a)(3)(B) allows for filing at any time, the Creditors' complaint should not be dismissed as untimely. The bankruptcy court reasoned that the burden was on the Debtors to provide notice because the Debtors were in the best position to spell their name correctly on the petition.

Finally, despite the correction of the Debtor's name in the amended petition, because the Debtors' own negligence caused the failed PACER searches, the bankruptcy court held that the harm resulting from the lack of notice should not be held against the Creditors.

### 2. <u>Ellet v. Stanislaus</u>

To support its holding, the bankruptcy court relied primarily on the reasoning in <u>Ellet v. Stanislaus</u>, 506 F.3d 774 (9th Cir. 2007), a case of first impression in the Ninth Circuit. In <u>Ellet</u>, the California Franchise Tax Board ("FTB") was scheduled as a creditor and actually received notice by mail of the debtor's bankruptcy filing. However, although the debtor's name was spelled correctly, the last four digits of the debtor's social security number ("SSN") were misstated on the notice. The <u>Ellet</u> court held that the notice was inadequate because the debtor's identity could not be discovered without undue burden to the FTB, thereby preventing the taxing authority from timely filing a claim for the debtor's delinquent taxes. <u>Id.</u> at 778, 781.

<u>Ellet</u> turned on evidence showing that when the FTB searched for the debtor's incorrect SSN in the FTB's own databases, an incorrect record of another person showing no tax liability was

-14-

found instead of the debtor's tax records. Id. at 776. Therefore, although the FTB arguably could have used the debtor's name as a cross-reference to find the debtor's tax records by using a labor intensive alternative process, the FTB was unable to identify the debtor correctly until after the bar date. Id. Rule 1005 is implicated under Ellet's reasoning because that rule imposes a duty on the debtor to provide correct identifying information, including name and SSN, to creditors receiving notice so that the creditors can discover the debtor's true identity without independent investigation.[12] Id. at 781. A failure to list correct identifying information on a petition fails "to notify creditor about the relevance of the bankruptcy proceeding to some of its claims." Id. (citing In re Anderson, 159 B.R. 830, 837-38 (Bankr. N.D. Ill. 1993)). Specifically, the Ellet court reasoned that placing the burden on the debtor to provide correct identifying information under Rule 1005 was reasonable where "[r]equiring a creditor to ferret out a debtor's correct identity when incorrect identifying information is

---

[12] Rule 1005 states the following:

The caption of a petition commencing a case under the Code shall contain the name of the court, the title of the case, and the docket number. The title of the case shall include the following information about the debtor: name, employer identification number, last four digits of the social security number, any other federal tax identification number, and all other names used within six years before filing the petition. If the petition is not filed by the debtor, it shall include all names used by the debtor which are known to the petitioners.

-15-

provided would be overly burdensome and inappropriate." Id. at 781.

In reasoning in Ellet that the burden should be on the debtor to give correct identifying information to the FTB, the court distinguished other cases supporting the debtor's position in which notice was found sufficient even though errors existed in the notice "because in each [case] the creditor was aware of the debtor's identity." Id. at 779. In fact, the Ninth Circuit distinguished a case where, though the debtor's name was misspelled in the caption of the petition, the creditor learned of the bankruptcy independently of the petition. Id. at 779-80 (citing Lagniappe Inn of Nashville, Ltd. v. Washington Nat'l Ins. Co. (In re Lagniappe Inn of Nashville, Ltd.), 50 B.R. 47, 50 (Bankr. M.D. Tenn. 1985)). Similarly, a case finding adequate notice was distinguished on the ground that the identity of the debtor was not truly at issue in that case because, even though the creditor was not listed at all in court documents and received no notice by mail, the creditor was informed of the bankruptcy by the debtor's attorney. Ellet, 506 F.3d at 780 (citing Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.), 920 F.2d 1428, 1431 (9th Cir. 1990)). Inquiry notice alone was sufficient in Coastal Alaska Lines to defeat the creditor's due process based notice challenge where the creditor received some information about the existence of bankruptcy proceedings of a known debtor. Coastal Alaska Lines, 920 F.2d at

-16-

1431.[13]

Thus, the _Ellet_ court distinguished between cases where the creditor could discover who the debtor was, and what claims the creditor had against that debtor, without burdensome searching of its records, from cases like the one before the _Ellet_ court where the creditor needed to perform a burdensome search through the creditor's own records merely to figure out if the creditor had any claims against the debtor described in the notice.

There are three steps to the notice analysis: _first_, whether a party can identify the debtor based on receipt of notice; _second_, whether there has been actual notice based on the information exchanged and conduct of the parties; and _third_, after actual notice is received, whether there was enough time to file a complaint or a motion for extension. _Ellet_ addresses only the first part of the analysis where a notice actually had been provided.[14]

Given the _Ellet_ court's emphasis on knowledge of the debtor's identity, it would be difficult to argue that _Ellet_ stands for the proposition that a creditor does not have adequate notice of a bankruptcy filing when the creditor is aware of the

---

[13] Not only a scheduled creditor, but even "an unscheduled creditor with actual notice of the bankruptcy has the burden to inquire as to the bar date for filing a nondischargeability complaint." _Manufacturers Hanover v. DeWalt (In re Dewalt)_, 107 B.R. 719, 721 (9th Cir. BAP 1989)(citing _In re Alton_, 64 B.R. 221, 224 (Bankr. M.D. Fla. 1986)), _rev'd on other grounds_, 961 F.2d 848 (9th Cir. 1992).

[14] _See_ _infra_ Section C of the Discussion with respect to timing.

-17-

debtor's identity and that a bankruptcy case has been filed despite having little information about the bankruptcy case,[15] including not knowing the bar date.

Here, the undisputed facts in the record show that the only notice which was ever possibly sent to Creditors or their attorneys in advance of the Bar Date was the Corrected Notice allegedly sent by Lawrence's office on August 12, 2010.  This conclusion is supported by the undisputed fact that the Creditors and their attorney did not receive the only other notice ever sent, which was the court's initial notice of the bankruptcy case, sent before the Corrected Notice.  On the record before us, subject to findings as to application of the mailbox rule, as discussed supra, we cannot conclude that the bankruptcy court clearly erred in the factual findings supporting its conclusion that Creditors were not provided with sufficient notice before the Bar Date to make them aware that the Debtors in fact had filed a bankruptcy case.

C.  Whether a scheduled creditor without proper notice may file a complaint pursuant to § 523(a)(3)(B) at any time.

Even an unscheduled or unlisted creditor who has either received formal notice or gains actual knowledge of the bankruptcy case has an "obligation to take timely action to protect [its] claim." Lompa v. Price (In re Price), 871 F.2d 97, 99 (9th Cir. 1989)(reasoning that "[t]he statutory language [of

---

[15] Dewalt, one of the cases on which Ellet relies, turned on whether there was adequate time to file a complaint after sufficient notice was given, not whether there was sufficient notice as such.  Ellet, 506 F.3d at 778.

-18-

§ 523(a)(3)(B)] clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates.")(internal citations omitted).  In Price, a creditor whose counsel received actual notice of the debtor's bankruptcy filing 58 days before the bar date and failed to file an exception to discharge complaint or a motion for extension before the bar date deadline passed was held to have failed to object timely to discharge under Rule 4007(c).[16]  Id. at 99.

In Dewalt, the 9th Circuit laid out the parameters for the timely filing of a complaint after actual notice, stating that there is a 30-day presumptive minimum time for a creditor to file a complaint or request an extension by motion unless, in an extreme case, the creditor intentionally refrained from filing a complaint.  Dewalt, 961 F.2d at 851.  The creditor in Dewalt was not included in the schedules as a creditor but was listed with an inaccurate address in the debtor's Statement of Intent.  Id. at 849.  Notice of the debtor's bankruptcy filing was not given

[16] Rule 4007(c) provides that:

> A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

-19-

to the creditor until "the secretary for the debtor's counsel telephoned the office of the creditor's counsel and left a cryptic message with the secretary that the debtor had previously filed for bankruptcy," only seven days before the bar date. Id. The Ninth Circuit reversed this Panel's determination that the creditor's complaint to except its debt from the debtor's discharge was untimely, having been filed approximately 140 days after the bar date, holding that requiring a creditor in such circumstances to file a motion for extension before the bar date ran would "unfairly punish[] creditors, holding them to the highest standards of diligence in a situation caused by negligence of the debtor, and rewarding the debtor, in effect, for negligent filing." Id. at 850.

In dicta, the Ninth Circuit stated in Dewalt that, "In no event . . . could the reasonable time period contemplated by section 523(a)(3)(B) be greater than the 80 days advance notice a properly scheduled creditor will ordinarily receive." Id. at 851 n.4.[17] That statement is interesting in light of the fact that the holding in Dewalt effectively blessed as timely an exception to discharge complaint filed approximately 140 days after the creditor was notified of the debtor's bankruptcy filing, as noted above. As discussed at oral argument, a "bright line" deadline of 80 days to file an exception to discharge or a denial of

---

[17] The suggested eighty-day maximum time assumes that ordinarily, creditors will receive at least twenty days' notice in advance of the § 341(a) meeting, with sixty days following the meeting date set as the bar date for the filing of nondischargeability complaints.

-20-

discharge complaint once notice is received by the creditor does not necessarily make sense in light of the reality that the § 341(a) meeting that triggers the 60-day deadline under Rule 4007(c) often is scheduled and noticed more than twenty days after the bankruptcy filing date.

Synthesizing the reasoning of Price and Dewalt leads to the conclusion that once a creditor gains actual notice of a bankruptcy, such notice triggers a deadline by which the creditor must protect its rights or its claim will be subject to discharge. Under Dewalt, a minimum 30-day deadline is presumptively reasonable, and the application of some deadline also is presumed, but no particular outside deadline is mandated.

Rule 4007(b) specifies no time limit for an unlisted creditor without notice under § 523(a)(3)(B) to file a nondischargeability complaint. In Ellet, the Ninth Circuit did not address Rule 4007. However, in Ellet, the FTB was scheduled as a creditor, but its claim was determined not subject to the claims bar date, so it can be inferred from Ellet's outcome that the fact that the FTB was scheduled as a creditor had no effect on the allowance or discharge of its claim in the absence of effective due process notice.

The Debtors argue chiefly that the distinction between § 523(a)(3) applicable to unlisted creditors and § 523(c)(1) applicable to listed creditors is "not merely technical." Appellants' Opening Brief at p. 12 (citing McGhan v. Rutz, 288 F.3d 1172, 1181 (9th Cir. 2002)). Instead, the Debtors contend that the Bankruptcy Code and Rules place the burden on scheduled creditors without notice to file a motion for extension

of time to file a complaint once they become aware of a debtor's bankruptcy, which Creditors did not do.

In rebuttal, Creditors argue that "the code does not seem to contemplate the situation where a claimant is listed on the schedule of liabilities, but yet does not receive notice of the bankruptcy filing." Appellees' Brief at p. 11. For support, Creditors cite a concurrence in In re Bucknum in which Judge O'Scannlain opined that "[t]he Bankruptcy Code and Rules themselves articulate no appreciable distinction between scheduled and unscheduled creditors for purposes of determining what constitutes sufficient notice of the filing deadline for nondischargeability complaints. If Congress had intended to make such a distinction, it certainly could have done so." Appellee's Brief at pp. 11-12 (quoting In re Bucknum, 951 F.2d at 209-10 (O'Scannlain concurring)). Creditors also offer several cases from bankruptcy courts in other circuits, but chiefly In re Lyman, where the court reasoned that "when a creditor is omitted from the matrix, that creditor is not 'scheduled' within the meaning of 523(a)(3)(B)." Appellee's Brief at p. 13; In re Lyman, 166 B.R. 333, 337 (Bankr. S.D. Ill. 1994).

While the bankruptcy court did not explicitly find that Creditors received actual notice at the latest via Mayes on October 27, 2010, when Lawrence sent Mayes the bankruptcy case number by email, that fact was not disputed, and the bankruptcy court reported that fact in its Under Advisement Decision.

The bankruptcy court ultimately held that Creditors did not receive adequate notice because Creditors could not access PACER records by name. Therefore, the complaint fell under

§ 523(a)(3)(B), and Rule 4007(b) applied to allow Creditors to file the complaint "at any time," without further analysis or fact finding.

Accepting that the Creditors received actual notice of the Debtors' bankruptcy filing on October 27, 2010, they filed their exception to discharge complaint 103 days later. In light of the Ninth Circuit's decisions in Price and Dewalt, in order to allow the Creditors' adversary proceeding to proceed, the bankruptcy court needed to determine that Creditors' delay in filing their complaint was reasonable or appropriate in the circumstances of this case. No such factual determination is reflected in the bankruptcy court's Under Advisement Decision. Accordingly, on remand, if the bankruptcy court holds to its determination that Rule 4007(b) applies, the bankruptcy court should make a specific determination as to whether the 103-day delay in filing Creditors' complaint after the Creditors learned of the Debtors' bankruptcy filing was reasonable or appropriate.

## VI. CONCLUSION

The bankruptcy court failed to make specific findings of fact and conclusions of law on the record sufficient to review its denial of the motion to dismiss when it made no reference to the mailbox rule and evidence relevant thereto in its findings and conclusions. We VACATE and REMAND for further findings of fact and conclusions of law consistent with this Memorandum decision.